## COLE v. HELBURN, Collector of Internal Revenue.

District Court, W. D. Kentucky, at Louisville.
March 24, 1933.

231

Elwood Hamilton, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. E. Angevine, Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge.

This is a suit for a refund of income taxes claimed to have been illegally exacted of the plaintiff by the Commissioner for the year 1929. The material facts are as follows:

On July 25, 1929, the plaintiff bought, through a member of the New York Stock Exchange, eight hundred shares of the capital stock of Arcturas Radio Corporation, paying therefor $32,320 in cash. On October 4, 1929, through the same brokers, he purchased one thousand shares of the capital stock of Earl Radio Corporation, paying therefor $7,000 in cash, the two purchases costing him a total of $39,320. On December 16, 1929, he sold through the same brokers the eight hundred shares of Arcturas Radio Corporation stock and the one thousand shares of Earl Radio Corporation stock for $8,635.50, which was $30,684.50 less than the stock cost him. On the same date he sold for his wife, Mary Bass Cole, through the same brokers, two hundred shares of the capital stock of Arcturas Radio Corporation. The broker gave the plaintiff a check for the entire proceeds of these sales, including the stock sold for his wife. On December 17, 1929, W. R. Cole, Jr., son of the plaintiff, purchased through the same brokerage firm one thousand shares of Arcturas Radio Corporation stock and one thousand shares of Earl Radio Corporation stock for the sum of $11,092.50, and on the same date the plaintiff delivered his check for $11,092.50, payable to W. R. Cole, Jr., to said W. R. Cole, Jr., who indorsed same and delivered it to the broker in payment for the shares of stock purchased by him. Simultaneously with the delivery of the check of the plaintiff to his son, W. R. Cole, Jr., the son delivered to plaintiff his demand note for the sum of $11,092.50, with interest at the rate of 6 per cent. per annum from date, and the one thousand shares of Arcturas Radio Corporation stock and the one thousand shares of Earl Radio Corporation stock were indorsed in blank by W. R. Cole, Jr., and attached to the note as collateral security therefor. The plaintiff indorsed on the face of the note this notation: "Mary Bass Cole owns a one-fifth interest in this note." This notation is explained by the fact that two hundred shares of the one thousand shares of Arcturas Radio Corporation stock sold by plaintiff belonged to Mary Bass Cole. No payment, either of principal or interest, was ever made on the note, and on June 15, 1931, the plaintiff wrote the word "cancelled" on the note and took over the stock.

Plaintiff in his evidence frankly admits that the sale of the radio stock was made by him for the purpose of establishing a loss in 1929 for income tax purposes, but that it was a bona fide sale. He and his son agree that the purchase by the son made on December 17, 1929, was on the advice of the plaintiff, who honestly believed that this stock would rise in value; that the plaintiff desired his son to make some money out of same, and that this paternal interest on his part prompted the plaintiff to furnish the son with the money with which to make the purchase. The record contains no evidence contradicting this testimony.

On February 6, 1928, the plaintiff bought four hundred shares of the capital stock of the Atlantic Coast Line Railroad Company for $72,500, these shares of stock being evidenced by certificates numbered from 23,984 to 23,991, both inclusive, and on February 24, 1928, he purchased three hundred additional shares of this stock for $49,200, the stock being represented by certificates numbered from 24,808 to 24,810, both inclusive. On July 22, 1929, he sold three hundred shares of this stock for $60,798, and in consummation of this sale he delivered the certificates representing the purchase made by him on February 24, 1928. He explains in his evidence that he intended to make delivery out of his first purchase, and that delivery out of the second purchase was a mistake on his part.

In his income tax return for 1929 the plaintiff claimed as a deductible loss sustained on his radio stock the sum of $30,684.50, and in reporting the profit realized on the sale of the three hundred shares of railroad stock he figured the cost at what he paid for that much stock purchased on February 6, 1928, instead of the price paid for the stock purchased on February 24, 1928. The Commissioner disallowed the deduction claimed as a loss on the radio stock, and figured the profit on the railroad stock transaction on the basis of what the shares actually delivered cost the plaintiff on February 24, 1928. The pro-

priety of this action of the Commissioner is the question for decision in this case.

■ The defendant makes no contention that the sale of the radio stock by the taxpayer was not a bona fide sale. The brief for the defendant expressly disclaims any intention to claim that the sale was a fraudulent device for the purpose of evading taxation. It is conceded that the plaintiff had the right to sell the stock for the purpose of establishing a loss for income tax purposes. The defendant bottoms his whole case upon the proposition that the plaintiff, within thirty days after the date of the sale of the radio stock, acquired substantially identical property, and that therefore, by the express provisions of section 118 of the Revenue Act of 1928 (26 USCA § 2118), is precluded from setting up the loss sustained as a deduction. Section 118 reads as follows: "In the case of any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, no deduction for the loss shall be allowed under section 2023 [23] (e) (2) of this title; nor shall such deduction be allowed under section 2023 [23] (f) unless the claim is made by a corporation, a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed."

In view of the concession made by the defendant that the plaintiff actually sold his stock, and the further concession that W. R. Cole, Jr., actually bought and paid for an equal amount of stock, I am unable to see how section 118 has any application. Viewed in its real light, under this record W. R. Cole, Jr., simply borrowed from his father $11,-092.50 and executed his note therefor, pledging as security the stock which he had bought and paid for. In transferring this stock in blank at the time he pledged same, W. R. Cole, Jr., simply did what every person is required to do who pledges corporate stock as collateral security on a note. It is a new conception to treat such a transaction as a sale by the pledgor to the pledgee. In my judgment, it possesses none of the elements of a sale by the pledgor to the pledgee, as that term is commonly used and understood. The situation is not altered by the fact that subsequently, on June 15, 1931, the plaintiff canceled the note and by agreement between him and his son took over the stock. The plaintiff testified that, at the time he took over the stock, the Arcturas Radio Corporation stock had dropped to less than half of the price paid for same by his son, and that the Earl Radio Corporation stock was practically worthless; that these stocks had been bought by his son on his advice, and he did not want his son to sustain a loss because of having acted upon his advice, and that these considerations prompted the cancellation of the note and the taking over of the pledged stock by the plaintiff. Independently of this testimony of the plaintiff, however, the stipulation precludes the defendant from characterizing the transaction between the plaintiff and his son other than as I have described it. As the plaintiff did not acquire title to his son's stock until long after the expiration of thirty days following the sale of his own stock, section 118 has no application, and plaintiff was entitled in his 1929 income tax return to deduct the loss sustained by him in the sale of his radio stock.

■ I cannot sustain plaintiff's contention with reference to the sale of the Atlantic Coast Line Railroad Company stock. He did not direct his broker to sell any particular stock. He simply directed him to sell three hundred shares, and, when the time came for plaintiff to deliver the property sold, he delivered certificates representing the stock purchased by him on February 24, 1928. There is no claim that plaintiff and the purchaser of this stock had any agreement or understanding as to the particular shares of stock involved in the transaction. Therefore, there can be no contention successfully made that the minds of the parties were in agreement as to the particular shares of stock bought, and that by mistake other and different shares were delivered. The only mistake was made by the plaintiff himself, and for this he must suffer. As it is beyond question that he actually sold and delivered the three hundred shares bought on February 24, 1928, the price paid for these shares on that date must be treated as the cost in computing plaintiff's profit on the sale of these shares.

A finding of facts, conclusions of law, and judgment in conformity with the views herein expressed may be prepared and presented for entry.