JOHN P. McWILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF SUSAN P. McWILLIAMS, DECEASED, JOHN P. McWILLIAMS, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BROOKS B. McWILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5945, 5946, 5947. Promulgated August 20, 1945.

*John A. Hadden, Esq.*, for the petitioners.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

**OPINION.**

SMITH, *Judge*: These proceedings, consolidated for hearing, involve income tax deficiencies as follows:

| Petitioner | Docket No. | Year | Deficiency |
|---|---|---|---|
| John P. McWilliams | 5945 | 1941 | $7,110.33 |
| Estate of Susan P. McWilliams | 5946 | 1940 | 296.75 |
| Brooks B. McWilliams | 5947 | 1940 | 1,845.52 |
| Do | do | 1941 | 4,184.07 |

In the determination of the deficiencies the respondent has disallowed the deduction of capital losses which the taxpayers claimed on the sale of securities, on the ground that they constituted losses on sales of property made directly or indirectly between members of a family as defined in paragraph (2) (D) of section 24 (b) of the Internal Revenue Code.

The petitioners, John P. McWilliams and Brooks B. McWilliams, are husband and wife, and are residents of Cleveland, Ohio. Susan P. McWilliams, deceased, was the mother of John P. McWilliams. She died in November 1941, and John P. McWilliams was appointed

executor of her estate. The income tax returns for the years involved were filed with the collector of internal revenue for the eighteenth district of Ohio.

John P. McWilliams, hereinafter referred to as petitioner, is president of the Youngstown Steel Door Co. In 1940 and 1941 he bought and sold a considerable amount of securities for his own and his wife's account, and also for his mother's account until her death. Petitioner's wife and mother both had large estates of their own, which petitioner managed for a number of years.

The sales of securities which gave rise to the losses here in controversy admittedly were for the purpose of establishing tax losses. In each instance petitioner would give his broker an order by phone to sell for his or his wife's, or his mother's account a certain number of shares of a particular stock at market and, at the same time, would instruct the broker thereafter to purchase at as nearly the same price as possible a like number of shares of the same stock for the account of one of the others. In each instance the broker was told that the sale was for the purpose of establishing a tax loss.

During the taxable years the following shares of stock were sold by petitioner for his individual account and for his wife's account:

*Docket No. 5945—John P. McWilliams—Year 1941:*

700 shares of International Nickel of Canada, Ltd.
200 shares of Eastman Kodak Co.
700 shares of General Electric Co.
100 shares of Monsanto Chemical Co.
100 shares of Cerro de Pasco
100 shares of Westinghouse Electric Co.

*Docket No. 5947—Brooks B. McWilliams—Year 1940:*

300 shares of General Electric
100 shares of Standard Oil Co. of N. J.
200 shares of International Nickel Co. of Canada, Ltd.

*Year 1941:*

1,000 shares of Basic Refractories, Inc.
300 shares of Libby-Owens-Ford Glass Co.
100 shares of E. I. DuPont deNemours Co.
200 shares of General Motors Corporation
100 shares of American Tel. & Tel. Co.
200 shares of Liggett & Myers Tobacco Co.

All of the above securities were sold pursuant to orders given to Curtiss-House & Co., stockbrokers in Cleveland, Ohio, and were executed on the New York Stock Exchange in the regular manner by Clark, Dodge & Co., members of the New York Stock Exchange and correspondents of Curtiss-House & Co. The securities had all been acquired and held by the taxpayers more than eighteen months prior

to their sale. The purchasers of the securities were unknown to the taxpayers.

At the time that petitioner placed the orders for sale of the above securities for his individual account he instructed his brokers to purchase a like number of the same shares at as nearly the same price as possible for the account of his wife. Likewise, when giving the orders to sell the shares for his wife's account he instructed his brokers to purchase a like number of the same shares for his individual account. These instructions were carried out and new certificates bearing different numbers from those sold were issued to the taxpayers. The purchase orders were executed in the same manner as the sales orders.

Petitioner's wife in 1940 and 1941 owned property greatly in excess of the amounts involved in the transactions under consideration. During all of her married life her securities have stood in her own name and have been kept separate from those of the petitioner. She has maintained a separate bank account and she and petitioner have filed separate income tax returns.

On the above mentioned sales petitioner claimed long term capital losses of $21,276.53 in 1941, and his wife claimed $5,592.49 in 1940 and $13,946.95 in 1941. The deductions were disallowed by the respondent as coming within the provisions of section 24 (b) of the Internal Revenue Code. The correctness of respondent's determination in this respect is the only question presented in these proceedings.

Under substantially the same circumstances as those described above relating to the sales and purchases of securities by petitioner and his wife, petitioner on November 28, 1940, sold 100 shares of Eastman Kodak Co. stock for the account of Susan P. McWilliams and on the same day purchased a like number of the same shares for his individual account. A long term capital loss of $1,755.79 on the sale of those shares was claimed in the return filed by Susan P. McWilliams, and was disallowed by the respondent.

Section 24 (b) provides in material part as follows:

SEC. 24. ITEMS NOT DEDUCTIBLE.

\* \* \* \* \* \* \*

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D);

\* \* \* \* \* \* \*

(D) Between a grantor and a fiduciary of any trust.

We think that the question presented here is controlled by our decision in *Pauline Ickelheimer*, 45 B. T. A. 478; affd. (C. C. A., 2d Cir.), 132 Fed. (2d) 660. In that case the taxpayer's husband, acting as her

attorney in fact, sold for her account over a period of nine days $100,000 face value of Postal Telegraph & Cable Corporation bonds and within a day or two after such sales he purchased a like number of the same bonds, acting as trustee of a trust of which his wife was beneficiary. All of such sales and purchases were made through a broker dealing on the New York Stock Exchange. We held, by a divided Court, that the sales of the bonds were not sales between petitioner and her husband; that is, "between the fiduciary of a trust and a beneficiary of such trust," within the meaning of section 24 (a) (6) of the Revenue Act of 1936, as amended by section 301 (a) of the 1937 Act (section 24 (b) (1) (F) of the Internal Revenue Code), and that the loss thereon was deductible as a capital loss in the taxpayer's return for 1937. We said in our opinion that:

* * * It is apparent that the sales of the bonds were made to purchasers other than the trustee of the trust. The fact that petitioner's husband as trustee purchased the bonds from the open market shortly thereafter does not convert the sales by petitioner and the purchases by her husband as trustee into indirect sales *between* petitioner and her husband as trustee. Nor does the fact that the transactions were carried out with a view to obtaining a loss deduction and to avoid the effects of section 118 so color these transactions that sales to others may be termed indirect sales from petitioner to her husband as trustee.

Respondent contends that, since petitioner's husband acted for petitioner under power of attorney and for the trust as its trustee, one directing mind controlled the sales and purchases of the bonds so that the sales must be considered to have been indirectly made between the petitioner and her husband as trustee. He asserts that the presence of a preconceived plan to permit a loss deduction for petitioner and yet obtain the bonds for the trust, plus the fact that the sales and purchases were directed by petitioner's husband, indicates that the bonds were sold, indirectly, by petitioner to her husband as trustee for the trust. We can not agree. We find no authority in the law or the decided cases for the position taken by respondent. Nor do statements in Congressional Committee reports shed any light on the question.

That case stands for the proposition that where listed securities are sold through the Stock Exchange to an unknown purchaser, and like securities are purchased through the Exchange from an unknown seller by some person having a relationship to the seller, such as that described in section 24 (b) (1) of the Internal Revenue Code, the transaction does not constitute a sale of property upon which a loss deduction is denied under the statute.

Since the statute treats alike sales of property between the fiduciary and a beneficiary of a trust and those between members of a family, our holding in the *Ickelheimer* case, *supra*, applies with equal force here.

While the facts in the instant proceedings as to the manner in which the sales and purchases were made differ somewhat from those in the

*Ickelheimer* case, the differences are not substantial and do not afford sufficient grounds for distinguishing the cases on principle.

*Decisions of no deficiency will be entered.*