COMMISSIONER OF INTERNAL REVE-
NUE v. KOHN et ux.

No. 5499.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1946.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Fred D. Townsend, of Columbia S. C., for respondents.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from the decision of the Tax Court of the United States allowing certain long-term capital losses to the petitioners, August Kohn and Dorita Kohn, husband and wife, for the taxable year 1941. The facts are not in dispute.

Kohn bought and sold securities for his own account; he also bought and sold securities as agent, and for the account, of the wife. Each had a separate brokerage account with the branch office, at Columbia, South Carolina, of a New York brokerage firm. Separate bank accounts were kept by Kohn and his wife at separate banks; neither one had authority to draw checks on the bank account of the other.

As to the transactions here in question during the taxable year, Kohn instructed the broker to sell for his account, or that of his wife, a specified number of shares of a particular stock, and, as to each sale, to buy a like number of shares for the other spouse, the non-selling party. Accordingly, when the broker sold one hundred shares of stock in the X corporation for the account of Kohn, one hundred shares of stock in the same corporation were bought for the account of his wife; in like manner, when one hundred shares of a particular corporation were sold for the wife's account, a like amount of the same stock was bought for the account of Kohn.

In some instances, the trade date of the purchase was the same as the trade date of the sale; while, in other instances, the trade date of the purchase followed by one or two days the trade date of the sale. In a majority of the transactions, the sales price and the purchase price were slightly different. All the transactions were effected through the New York Stock Exchange. Accordingly, neither Kohn nor his wife knew to whom he or she sold or from whom he or she bought. And neither buyer held the identical share certificate formerly held by the other. It is conceded that the instant sales transactions were ef-

fected for the purpose of establishing losses for tax purposes.

The apposite tax statute, Internal Revenue Code, § 24, 26 U.S.C.A.Int.Rev.Code, § 24(b), reads:

"§ 24. Items not deductible * * *

"(b) Losses from sales or exchanges of property

"(1) Losses disallowed. In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

"(A) Between members of a family, as defined in paragraph (2) (D)."

And paragraph (2) (D) of this section reads:

"The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants."

The single question before us, then, is whether in this case there have been sales or exchanges of property "indirectly" between spouses within the meaning of the statute set out above. The Tax Court answered this question in the negative.

■■ Since this question is one of law, the interpretation of a statute, we are not compelled to follow the decision of the Tax Court below. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Trust of Bingham's Trust Co. v. Commissioner, 325 U.S. 365, 371, 372, 65 S.Ct. 1232, 89 L.Ed. 1619. And, as we believe the Tax Court's decision here was a clear-cut mistake of law, we must reverse that decision.

The opinion of Judge Arundell in the Tax Court contains no discussion on principle of the instant problem. That Court grounded its decision solely on the decided cases, which unquestionably favor the Tax Court's views. John P. McWilliams, 5 T.C. 623; Ickelheimer v. Commissioner, 45 B.T.A. 478, affirmed by the Circuit Court of Appeals for the Second Circuit, Commissioner v. Ickelheimer, 132 F. 2d 660, 145 A.L.R. 556. This decision of the Board of Tax Appeals (now the Tax Court of the United States), though, is criticized in 55 Harvard Law Review, 872,

while Circuit Judge Learned Hand filed a dissenting opinion in Commissioner v. Ickelheimer. To us, the reasoning of Judge Learned Hand is so cogent and convincing that we might adopt his opinion as our own and let it go at that. Yet we deem it proper to express our views a bit further.

We think the decision below subordinates substance to form, reality to appearance, the spirit of the statute to the letter. In Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 808, 78 L.Ed. 1361, it was said:

"But the expounding of a statutory provision strictly according to the letter without regard to other parts of the act and legislative history would often defeat the object intended to be accomplished."

And, again, in Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199, we find:

"It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail."

In the case before us, the husband and wife, regarded as a unit (and the statute so considers them), have suffered no economic loss. Before these transactions, and also after them, the husband-and-wife-unit owned the same number of shares in the same corporations at substantially the same cost to the unit. A loss, to be deductible, must be evidenced by closed and completed transactions. Here this essential element is conspicuously absent. In reality, there was no real loss to the husband-wife unit. There just was no bona fide intention on the part of the family unit to make a final disposition of these securities.

We are not impressed by the facts that the sales and purchases were made through

the Stock Exchange, that neither husband nor wife received the identical share certificate held by the other, that neither knew the other party to whom he or she sold, or from whom he or she bought. These circumstances are merely external garments that clothe the transactions, outward trappings at best. In no way do they condition the essential verities. The approach to a tax statute is functional, not conceptualistic. We are concerned rather with the result actually achieved than with the subtle means or devious methods used to bring this result to pass. Taxpayers should not be permitted to sell their stock, have it too, and then claim a loss on the transaction.

If the adverb "indirectly" in the statute has any meaning (as Congress unquestionably intended), it must have been used to prevent just such transactions as are here involved. Otherwise evasion through the family device is almost invited. The clear purpose of the statute seems to be reflected in its legislative history. We quote two extracts from Committee Reports:

"Many instances have been brought to light where transactions have taken place for the sole purpose of taking a loss for income-tax purposes. It is believed that the recommendation of the sub-committee, if followed, will effectually close this opportunity for tax avoidance." (Preliminary Report of a Sub-committee on Ways and Means on Prevention of Tax Avoidance, 73rd Congress, 2nd Session, page 15.)

"Experience shows that the practice of creating losses through transactions between members of a family and close corporations has been frequently utilized for avoiding the income tax. It is believed that the proposed change will operate to close this loophole of tax avoidance." (House Report, No. 704, 73rd Congress, 2nd Session, page 23.)

In his dissenting opinion in the Ickelheimer case, supra, 2 Cir., 132 F.2d at page 662, Circuit Judge Learned Hand stated:

"The 'wash sales' section—§ 118 of the Act of 1936, 26 U.S.C.A.Int.Rev.Code, § 118—shows that Congress did not regard the chance taken by an investor who sold and rebought within thirty days, as enough of a break in his ownership to 'realize' a loss; the situation here is somewhat like that."

We think this sheds light on just how far Congress intended to go when it enacted the "family group" statute. The instant case is thus peculiarly one for the application of the ancient rule that in interpreting a statute, the court should look to the old law, the mischief and the remedy. It would therefore seem to us that when Congress incorporated the word "indirectly" in the "family group" statute, it clearly manifested an intent to catch just such ingenious devices as that employed by Mr. and Mrs. Kohn.

The decision of the Tax Court of the United States is reversed.

Reversed.