## McWILLIAMS v. COMMISSIONER OF INTERNAL REVENUE.

NO. 945.

Argued May 8, 1947.—Decided June 16, 1947.

*John A. Hadden* argued the cause for petitioners.    With him on the brief was *John S. Beard, Jr.*

*Arnold Raum* argued the cause for respondent. With him on the brief were *Acting Solicitor General Washington, Sewall Key, Lee A. Jackson* and *Morton K. Rothschild.*

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The facts of these cases are not in dispute. John P. McWilliams, petitioner in No. 945, had for a number of years managed the large independent estate of his wife, petitioner in No. 947, as well as his own. On several occasions in 1940 and 1941 he ordered his broker to sell certain stock for the account of one of the two and to buy the same number of shares of the same stock for the other, at as nearly the same price as possible. He told the broker that his purpose was to establish tax losses. On each occasion the sale and purchase were promptly negotiated through the Stock Exchange, and the identity of the persons buying from the selling spouse and of the persons selling to the buying spouse was never known. Invariably, however, the buying spouse received stock certificates different from those which the other had sold. Petitioners filed separate income tax returns for these years, and claimed the losses which he or she sustained on the sales as deductions from gross income.

The Commissioner disallowed these deductions on the authority of § 24 (b) of the Internal Revenue Code,[1]

---

[1] The material parts of § 24 (b) are as follows:

"(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

"(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

"(A) Between members of a family, as defined in paragraph (2) (D);

"(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the

which prohibits deductions for losses from "sales or exchanges of property, directly or indirectly . . . Between members of a family," and between certain other closely related individuals and corporations.

On the taxpayers' applications to the Tax Court, it held § 24 (b) inapplicable, following its own decision in *Ickelheimer* v. *Commissioner*,[2] and expunged the Commissioner's deficiency assessments.[3] The Circuit Court of Appeals reversed the Tax Court[4] and we granted certiorari[5] because of a conflict between circuits[6] and the importance of the question involved.

outstanding stock of which is owned, directly or indirectly, by or for such individual;

"(C) Except in the case of distributions in liquidation, between two corporations more than 50 per centum in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company;

"(D) Between a grantor and a fiduciary of any trust;

"(E) Between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust; or

"(F) Between a fiduciary of a trust and a beneficiary of such trust."

Section 24 (b) (2) (D) defines the family of an individual to include "only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; . . . ."

[2] 45 B. T. A. 478, affirmed, 132 F. 2d 660 (C. C. A. 2).

[3] 5 T. C. 623.

[4] 158 F. 2d 637 (C. C. A. 6).

[5] 330 U. S. 814. In No. 946, the petition for certiorari of the Estate of Susan P. McWilliams, the deceased mother of John P. McWilliams, was granted at the same time as the petitions in Nos. 945 and 947, and the three cases were consolidated in this Court. As all three present the same material facts and raise precisely the same issues, no further reference will be made to the several cases separately.

[6] The decision of the Circuit Court of Appeals for the Second Circuit in *Commissioner* v. *Ickelheimer, supra*, note 2, is in conflict on

Petitioners contend that Congress could not have intended to disallow losses on transactions like those described above, which, having been made through a public market, were undoubtedly bona fide sales, both in the sense that title to property was actually transferred, and also in the sense that a fair consideration was paid in exchange. They contend that the disallowance of such losses would amount, *pro tanto*, to treating husband and wife as a single individual for tax purposes.

In support of this contention, they call our attention to the pre-1934 rule, which applied to all sales regardless of the relationship of seller and buyer, and made the deductibility of the resultant loss turn on the "good faith" of the sale, *i. e.*, whether the seller actually parted with title and control.[7] They point out that in the case of the usual intra-family sale, the evidence material to this issue was peculiarly within the knowledge and even the control of the taxpayer and those amenable to his wishes, and inaccessible to the Government.[8] They maintain that the only purpose of the provisions of the 1934 and 1937 Revenue Acts—the forerunners of § 24 (b)[9]—was to

this point with the decision of the Circuit Court of Appeals for the Sixth Circuit in the present case, and also with that of the Circuit Court of Appeals for the Fourth Circuit in *Commissioner* v. *Kohn,* 158 F. 2d 32.

[7] *Commissioner* v. *Hale,* 67 F. 2d 561 (C. C. A. 1); *Zimmermann* v. *Commissioner,* 36 B. T. A. 279, reversed on other grounds, 100 F. 2d 1023 (C. C. A. 3); *Uihlein* v. *Commissioner,* 30 B. T. A. 399, affirmed, 82 F. 2d 944 (C. C. A. 7).

[8] See H. Rep. No. 1546, 75th Cong., 1st Sess., p. 26 (1939-1 Cum. Bull. (Part 2) 704, 722–723). See also cases cited in note 7, *supra.*

[9] The provisions of § 24 (b) (1) (A) and (B) of the Internal Revenue Code originated in § 24 (a) (6) of the Revenue Act of 1934, 48 Stat. 680, 691. These provisions were reenacted without change as § 24 (a) (6) of the Revenue Act of 1936, 49 Stat. 1648, 1662, and the provisions of § 24 (b) (1) (C), (D), (E), and (F) of the Code were added by § 301 of the 1937 Act, 50 Stat. 813, 827.

overcome these evidentiary difficulties by disallowing losses on such sales irrespective of good faith. It seems to be petitioners' belief that the evidentiary difficulties so contemplated were only those relating to proof of the parties' observance of the formalities of a sale and of the fairness of the price, and consequently that the legislative remedy applied only to sales made immediately from one member of a family to another, or mediately through a controlled intermediary.

We are not persuaded that Congress had so limited an appreciation of this type of tax avoidance problem. Even assuming that the problem was thought to arise solely out of the taxpayer's inherent advantage in a contest concerning the good or bad faith of an intra-family sale, deception could obviously be practiced by a buying spouse's agreement or tacit readiness to hold the property sold at the disposal of a selling spouse, rather more easily than by a pretense of a sale where none actually occurred, or by an unfair price. The difficulty of determining the finality of an intra-family transfer was one with which the courts wrestled under the pre-1934 law,[10] and which Congress undoubtedly meant to overcome by enacting the provisions of § 24 (b).[11]

It is clear, however, that this difficulty is one which arises out of the close relationship of the parties, and would be met whenever, by prearrangement, one spouse sells and another buys the same property at a common price, regardless of the mechanics of the transaction. Indeed, if the property is fungible, the possibility that a sale and purchase may be rendered nugatory by the buying

[10] Cf. *Shoenberg* v. *Commissioner*, 77 F. 2d 446 (C. C. A. 8); *Cole* v. *Helburn*, 4 F. Supp. 230; *Zimmermann* v. *Commissioner, supra*, note 7.

[11] See H. Rep. No. 1546, 75th Cong., 1st Sess., p. 26, *supra*, note 8.

spouse's agreement to hold for the benefit of the selling spouse, and the difficulty of proving that fact against the taxpayer, are equally great when the units of the property which the one buys are not the identical units which the other sells.

Securities transactions have been the most common vehicle for the creation of intra-family losses. Even if we should accept petitioners' premise that the only purpose of § 24 (b) was to meet an evidentiary problem, we could agree that Congress did not mean to reach the transactions in this case only if we thought it completely indifferent to the effectuality of its solution.

Moreover, we think the evidentiary problem was not the only one which Congress intended to meet. Section 24 (b) states an absolute prohibition—not a presumption—against the allowance of losses on any sales between the members of certain designated groups. The one common characteristic of these groups is that their members, although distinct legal entities, generally have a near-identity of economic interests.[12] It is a fair inference that even legally genuine intra-group transfers were not thought to result, usually, in economically genuine realizations of loss, and accordingly that Congress did not deem them to be appropriate occasions for the allowance of deductions.

The pertinent legislative history lends support to this inference. The Congressional Committees, in reporting the provisions enacted in 1934, merely stated that "the practice of creating losses through transactions between members of a family and close corporations has been frequently utilized for avoiding the income tax," and that these provisions were proposed to "deny losses to be taken in the case of [such] sales" and "to close this loophole of

---

[12] See the text of § 24 (b) (1), quoted in note 1.

tax avoidance." [13]    Similar language was used in reporting the 1937 provisions.[14]    Chairman Doughton of the Ways and Means Committee, in explaining the 1937 provisions to the House, spoke of "the artificial taking and establishment of losses where property was shuffled back and forth between various legal entities owned by the same persons or person," and stated that "these transactions seem to occur at moments remarkably opportune to the real party in interest in reducing his tax liability but, at the same time allowing him to keep substantial control of the assets being traded or exchanged." [15]

We conclude that the purpose of § 24 (b) was to put an end to the right of taxpayers to choose, by intra-family transfers and other designated devices, their own time for realizing tax losses on investments which, for most practical purposes, are continued uninterrupted.

We are clear as to this purpose, too, that its effectuation obviously had to be made independent of the manner in which an intra-group transfer was accomplished.  Congress, with such purpose in mind, could not have intended to include within the scope of § 24 (b) only simple transfers made directly or through a dummy, or to exclude

---

[13] H. Rep. No. 704, 73d Cong., 2d Sess., p. 23 (1939–1 Cum. Bull. (Part 2) 554, 571) ; S. Rep. No. 558, 73d Cong., 2d Sess., p. 27 (1939–1 Cum. Bull. (Part 2) 586, 607).

[14] The type of situations to which these provisions applied was described as being that "in which, due to family relationships or friendly control, artificial losses might be created for tax purposes." H. Rep. No. 1546, 75th Cong., 1st Sess., p. 28 (1939–1 Cum. Bull. (Part 2) 704, 724).

[15] 81 Cong. Rec. 9019.  Representative Hill, chairman of a House subcommittee on the income-tax laws, explained to the House with reference to the 1934 provisions that the Committee had "provided in this bill that transfers between members of the family for the purpose of creating a loss to be offset against ordinary income shall not be recognized for such deduction purposes."  78 Cong. Rec. 2662.

transfers of securities effected through the medium of the Stock Exchange, unless it wanted to leave a loop-hole almost as large as the one it had set out to close.

Petitioners suggest that Congress, if it truly intended to disallow losses on intra-family transactions through the market, would probably have done so by an amendment to the wash sales provisions,[16] making them applicable where the seller and buyer were members of the same family, as well as where they were one and the same individual. This extension of the wash sales provisions, however, would bar only one particular means of accomplishing the evil at which § 24 (b) was aimed, and the necessity for a comprehensive remedy would have remained.

Nor can we agree that Congress' omission from § 24 (b) of any prescribed time interval, comparable in function to that in the wash sales provisions, indicates that § 24 (b) was not intended to apply to intra-family transfers through the Exchange. Petitioners' argument is predicated on the difficulty which courts may have in deter-

[16] Sec. 118 of the Internal Revenue Code, which first appeared in its present form as § 118 of the Revenue Act of 1932, 47 Stat. 169, 208, provides in part as follows:

"SEC. 118. LOSS FROM WASH SALES OF STOCK OR SECURITIES.

"(a) In the case of any loss claimed to have been sustained from any sale or other disposition of shares of stock or securities where it appears that, within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date, the taxpayer has acquired (by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction for the loss shall be allowed under section 23 (e) (2); nor shall such deduction be allowed under section 23 (f) unless the claim is made by a corporation, a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business."

mining whether the elapse of certain periods of time between one spouse's sale and the other's purchase of like securities on the Exchange is of great enough importance in itself to break the continuity of the investment and make § 24 (b) inapplicable.

Precisely the same difficulty may arise, however, in the case of an intra-family transfer through an individual intermediary, who, by pre-arrangement, buys from one spouse at the market price and a short time later sells the identical certificates to the other at the price prevailing at the time of sale. The omission of a prescribed time interval negates the applicability of § 24 (b) to the former type of transfer no more than it does to the latter. But if we should hold that it negated both, we would have converted the section into a mere trap for the unwary.[17]

Petitioners also urge that, whatever may have been Congress' intent, its designation in § 24 (b) of sales "between" members of a family is not adequate to comprehend the transactions in this case, which consisted only of a sale of stock by one of the petitioners to an unknown stranger, and the purchase of different certificates of stock by the other petitioner, presumably from another stranger.

We can understand how this phraseology, if construed literally and out of context, might be thought to mean

---

[17] We have noted petitioners' suggestion that a taxpayer is assured, under the wash sales provisions, of the right to deduct the loss incurred on a sale of securities, even though he himself buys similar securities thirty-one days later; and that he should certainly not be precluded by § 24 (b) from claiming a similar loss if the taxpayer's spouse, instead of the taxpayer, makes the purchase under the same circumstances. We do not feel impelled to comment on these propositions, however, in a case in which the sale and purchase were practically simultaneous and the net consideration received by one spouse and that paid by the other differed only in the amount of brokers' commissions and excise taxes.

only direct intra-family transfers. But petitioners concede that the express statutory reference to sales made "directly or indirectly" precludes that construction. Moreover, we can discover in this language no implication whatsoever that an indirect intra-family sale of fungibles is outside the statute unless the units sold by one spouse and those bought by the other are identical. Indeed, if we accepted petitioners' construction of the statute, we think we would be reading into it a crippling exception which is not there.

Finally, we must reject petitioners' assertion that the *Dobson* rule [18] controls this case. The Tax Court found the facts as we stated them, and then overruled the Commissioner's determination because it thought that § 24 (b) had no application to a taxpayer's sale of securities on the Exchange to an unknown purchaser, regardless of what other circumstances accompanied the sale. We have decided otherwise, and on our construction of the statute, and the conceded facts, the Tax Court could not have reached a result contrary to our own.[19]

*Affirmed.*

MR. JUSTICE BURTON took no part in the consideration or decision of these cases.

---

[18] *Dobson* v. *Commissioner,* 320 U. S. 489.
[19] Cf. *Trust of Bingham* v. *Commissioner,* 325 U. S. 365.