## NATIONAL METROPOLITAN BANK OF WASHINGTON et al. v. UNITED STATES.

### No. 49826.

United States Court of Claims.

April 7, 1953.

Charles T. Akre, Washington, D. C., for plaintiffs.

Joseph H. Sheppard, Washington, D. C., with whom was Asst. Atty. Gen. Charles S. Lyon, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

This is a suit to recover income taxes alleged to have been erroneously exacted.

There is no dispute as to the facts. Christina Buchholz was the owner of the Occidental Hotel at Nos. 1411 and 1413 Pennsylvania Avenue Northwest, Washington, D. C., which she had acquired under the will of her husband Gustav Buchholz, who died in June 1925. In August of that year Christina Buchholz entered into a written agreement with her son, Frederick, plaintiffs' decedent, transferring to him the goodwill and all the other assets of the Occidental Hotel, in consideration of his agreement to devote his best efforts to the conduct of the business, to discharge all the obligations of the lease which the Occidental Hotel had on 1411 Pennsylvania Avenue N.W., to pay all debts and taxes incident to said business, to

maintain suitable insurance, and to make suitable repairs, and, in addition, to pay all debts of the estate of Gustav Buchholz, all taxes thereon, all expenses of administration, and all legacies provided for in Gustav Buchholz's will, and in further consideration of the right in Christina Buchholz to occupy, rent free, apartment "7–F" in 1411 Pennsylvania Avenue, and to pay to her as compensation for acting as housekeeper of the Hotel Occidental the sum of $200 a month.

As the profits of the hotel business accumulated they were credited on the hotel's books to Frederick W. Buchholz's personal drawing account. From year to year he withdrew such portion of these profits for his own personal use as he desired. Between January 1, 1944, and November 22, 1944, the date of his death, he withdrew from the profits of the business a total of $65,174.23, but at the time of his death there remained a balance in his account on the books of the hotel of $36,346.64.

His executors included this balance in his income for the period and paid income taxes on it. Later they decided it should not have been included and they filed a claim for refund of the additional taxes resulting from its inclusion. This claim was denied and this suit was brought.

The agreement between plaintiffs' decedent and his mother provided for the following, in the event of the death of Frederick W. Buchholz during his mother's lifetime:

"It is further agreed by the parties hereto that if during the lifetime of the party of the first part [Christina Buchholz], the party of the second part [Frederick Buchholz] shall die, or for any other reason cease to carry on the aforesaid business, except upon the written consent of the party of the first part, the said business, and all rights and interests whatsoever therein of the party of the second part, and all and singular the assets, of whatsoever character, connected therewith, shall forthwith revert to and become the property of the party of the first part, and all right, title and interest whatso-

ever of the party of the second part therein shall absolutely cease and determine * * *."

Under this clause of the contract Christina Buchholz took over all the assets of the business on her son's death, including the balance remaining in his drawing account. The parties agree that she is entitled to this balance in his drawing account under this provision of the contract, and it was stated in oral argument that the United States District Court for the District of Columbia had so decreed. An appeal was taken to the Court of Appeals and the majority of that court affirmed in a *per curiam* opinion. National Metropolitan Bank of Washington v. Doherty, 82 U.S.App.D.C. 399, 160 F.2d 580. The opinion read:

"The District Court granted appellee's motion to dismiss appellant's complaint on the ground that it failed to state a claim on which relief could be granted. The question turned on the interpretation of a contract. A majority of this court are of opinion that the District Court's interpretation is correct. The judgment is therefore affirmed."

We are of the opinion that under this interpretation of the agreement between plaintiffs' deceased and his mother, this balance in his account was not income to him and should not have been included in his gross income for the taxable period.

There can be no doubt that Frederick W. Buchholz had the right to withdraw this balance from the business at any time for his own personal use, but the contract has been interpreted to mean that if he had not actually done so prior to his death, his estate was not entitled to it, but upon his death it became the property of his mother.

We would have experienced some difficulty in determining whether or not the estate of Frederick Buchholz was entitled to these profits under the contract, but this difficulty has been removed by the decree of the District Court, affirmed on appeal. If this balance did not become a part of

his estate, but went to his mother at his death, not by inheritance, but by virtue of the contract, then it was not his income, but was his mother's income, accruing to her as one who had an interest in the business. Whether or not his mother, or her estate, should pay taxes on it is not before us, but we are convinced that under the contract, as it has been interpreted, it was not Frederick Buchholz's income.

As the contract has been interpreted, Frederick's right to the profits of the business was contingent on his withdrawal of those profits prior to his death. If he died before he had withdrawn them, the profits went, not to his estate, but to his mother. Before his death, he was undoubtedly entitled to the profits; but death intervened, whereupon the profits went to his mother. If they were his mother's profits, they could not have been his.

Plaintiffs also contend that if this be considered to have been income to decedent, then he is entitled to have this income diminished by the amount of it because he had to give it back. Defendant says this is not true because it continued to be his income until he died and, therefore, he did not have to give it back within the taxable period. We do not face this question because we do not think it was his income anyway; but we are of the opinion that his estate should not have to pay income taxes on it, since his estate never received the benefit of it, it having gone under the contract, not to his estate, but to his mother.

Plaintiffs also claim a loss of the amount decedent paid for the transfer of the business to him. The consideration for the transfer was his agreement to pay all debts of the estate of his father, Gustav Buchholz, all taxes thereon, all legacies in his father's will, and the expenses of the administration of his estate. The total amount paid by him for these purposes amounted to $12,010.97. His executors claim this amount as a loss in the taxable period in which he died.

The contract between him and his mother, under which the hotel business was transferred to him, provided that the business should become his absolutely if his mother died during his lifetime and he was still operating the business; but if he died first, the business was to revert to his mother. Had he outlived his mother, his original investment would have been unimpaired by his death; but, having predeceased his mother, it was wiped out on his death, leaving nothing to go to his estate. When he died, then, he lost his original investment.

Since this was a loss "incurred in trade or business", his estate is entitled to deduct it under section 23(e) (1) of the Internal Revenue Code, 26 U.S.C. (1946 Ed.) sec. 23.

This is in harmony with the opinion of the Tax Court in Gannon v. Commissioner, 16 T.C. 1134. In that proceeding there was involved the right of Gannon to deduct the amount he had paid into the law firm of Baker, Botts, Parker and Garwood of Houston, Texas, for a 6.2 percent interest in that firm. His contract with the firm provided that he was to forfeit the amount he had paid for his interest in case he withdrew from the firm during his lifetime. He did withdraw and claimed the amount paid as a loss incurred in trade or business. The Tax Court held that he was entitled to it. The Commissioner of Internal Revenue acquiesced in the holding. 1951–52 C. B. 2.

This holding was reiterated in Hutcheson v. Commissioner, 17 T.C. 14.

It is said, however, that he could not have sustained a loss because there was more cash in the business at the time he took it over than the amount he paid out in discharge of his agreement to pay the debts, taxes and expenses of administration of the estate of Gustav Buchholz. There was a balance of $24,330.48 to the credit of the Occidental Hotel in the Merchant's Bank and Trust Company of Washington, D. C., which was double what he paid out in discharge of his obligations under the contract with his mother. However, we do not think that Frederick Buchholz had the right at the time he took over the business to withdraw this balance for his own personal use. It is true that the cash on hand was transferred to him by his mother, together with all the other assets of the

hotel business; but it was an asset to be used in the conduct of the business, just as the tables, chairs, dishes, etc., were to be used. It was working capital and could no more have been withdrawn by Buchholz for his own personal use than he could have sold the furniture and equipment of the business and put the proceeds of the sale in his pocket. All that Buchholz was ever entitled to was the profits of the business, and it was only the profits that were credited to his account. (Commissioner's finding 7, to which no exception was taken.) He had no right to waste the assets of the business, and impair the reversionary interest of his mother. His obligation was to use the assets turned over to him in the conduct of the business. He agreed "to devote his best efforts to the conduct of said business." Had he withdrawn all the cash in the bank and had no money left to meet his payroll and to buy food and supplies, he would have fallen far short of devoting his best efforts to the conduct of the business. Since he could withdraw only the profits of the business for his personal use, it is immaterial that there was more money in the bank than he paid for the business.

█ The defendant sets out on page 70 of its brief section 43 of the Internal Revenue Code, as amended by section 134(b) of the Revenue Act of 1942, 56 Stat. 798, 830, 26 U.S.C. § 43, the last sentence of which reads:

"In the case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting amounts (except amounts includible in computing a partner's net income under section 182) accrued as deductions and credits only by reason of the death of the taxpayer shall not be allowed in computing net income for the period in which falls the date of the taxpayer's death."

This is inapplicable to the question before us. It means that if a deduction would not have accrued until after the taxpayer's death, had he not died, his death will not cause it to accrue in the period just before his death so that it may be deducted in that period. It does not mean that a recognized deduction occasioned by death cannot be deducted.

The report of the Senate Finance Committee on the Revenue Act of 1942, on pages 100 and 101, reads:

" * * * These subsections further provide that amounts (other than amounts includible by a partner under section 182 in computing net income) which would be includible in the income of, or allowable as deductions and credits to, a decedent who keeps his books on the basis of the accrual method of accounting solely by reason of his death shall not be included in computing his income for the taxable period in which falls the date of his death. The purpose of this provision is to insure that with respect to the determination of the decedent's income for his last taxable period the death of the decedent will not effect any change in the accounting practice by which the decedent determined his income during his life. Thus, upon the dissolution of a partnership because of the death of a partner the income of the partnership for the year ending with the dissolution, computed only according to the practice of the partnership in properly keeping its books, is included in the income of the deceased partner. For example, if a law partnership, keeping its books on the accrual basis, is entitled to certain contingent fees which are only accrued upon the completion of the cases involved, such partnership will compute its tax for the year ending with the dissolution without accruing, on account of the death of the partner at such time, any such contingent fees in uncompleted cases."

The report of the House Committee reads, on page 84:

" * * * These subsections further provide that amounts (other than amounts includible by a partner under section 182 in computing net income) which would be includible in the income of, or allowable as deductions

and credits to, a decedent who keeps his books on the basis of the accrual method of accounting solely by reason of his death shall not be included in computing his income for the taxable period in which falls the date of his death. The purpose of this provision is to insure that with respect to the determination of the decedent's income for his last taxable period the death of the decedent will not effect any change in the accounting practice by which the decedent determined his income during his life. Thus, upon the dissolution of a partnership because of the death of a partner, the income of the partnership for the year ending with the dissolution, computed only according to the practice of the partnership in properly keeping its books, is included in the income of the deceased partner."

This section has no application to our question.

 Nor is section 24(b) (1) (A) of the Internal Revenue Code, 26 U.S.C. § 24(b) (1) (A), applicable. This disallows "losses from sales or exchanges of property" "Between members of a family". What this statute means is that if I sell to a member of my family a piece of property at less than I paid for it, I cannot deduct the difference as a loss. The loss here was not a loss from a sale or exchange of property; it was a loss occasioned by death.

Dealings between close members of a family often are not arms-length transactions. Frequently the property may be sold for more or less than it is worth; and, hence, it is no true measure of a loss, or evidence of a loss at all. The statute was designed to take care of such a situation. Here the loss did not result from a sale, but from the death of the owner of the property. Section 24(b) (1) (A) is not applicable.

The plaintiffs are entitled to recover on both items. Entry of judgment will be withheld until the incoming of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report by a Commission of the court, showing the amount due plaintiffs computed in accordance with this opinion.

It is so ordered.

HOWELL and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting in part).

I am unable to agree with that part of the court's decision which treats the $12,010.97 which Frederick Buchholz expended in 1925 to pay the debts of the business which he then took over, as a business loss to him upon his death. In the transaction with his mother, pursuant to which he paid out the $12,010.97, he received, in addition to the business and its tangible assets, the sum of $24,330.48 which was then on deposit in a bank, to the account of the business. Thus by the very transaction in which he paid $12,010.97 he received $24,330.48. In the opinion of the court, it is said that this sum was working capital which Frederick Buchholz had no right to use, except for the carrying on of the business. The court apparently presumed, there being a complete absence of evidence on the subject, that Frederick Buchholz did not use any part of this money to pay the debts, taxes, and expenses of administration of his father's estate. This conclusion, it seems to me, requires further examination.

The agreement quoted in Finding 6 between Frederick and his mother Christina, and Mr. Peele, one of the executors, recited that Christina desired to have all the assets of the restaurant business turned over to her by the executors so that she could turn them over to Frederick. Frederick and his mother then covenant and agree, jointly and severally, to provide the funds to pay the debts, taxes, and expenses of administration of the estate. I think they meant that the money, which Christina was to receive pursuant to the agreement, and was to immediately turn over to Frederick, was to be available for that purpose.

The court says that the money in the bank thus turned over was working capital. So far as is known, all or some of it may have been profits. If so, and it was left intact, as the court says it should have

been, and therefore presumes that it was, that would have made Frederick's profits for the next accounting period that much larger, since the so-called working capital would have been available to pay the expenses of the business. Whether Frederick did so keep his accounts, and pay income taxes upon his profits as so increased, we have, of course, no idea. The court apparently presumes that he did.

The whole arrangement between Frederick and his mother seems to me to throw doubt upon the correctness of any assumption that the strict and technically accurate accounting which might have been required between strangers dealing at arm's length was required of Frederick. The plaintiffs seem to be winning a suit without proof, upon the basis of presumptions which may well be contrary to the facts.

There is, I think, another impediment to the plaintiffs' recovery on this part of their case. Section 24(b) (1) of the Internal Revenue Code provides:

"In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

"(A) Between members of a family, as defined in paragraph (2) (D)".

The definition referred to includes parents and children.

The transfer of the property from Christina to Frederick was a sale. It was made in consideration of certain promised payments and certain required conduct in the carrying on and preservation of the business. Assuming, as the court does, that Frederick paid some $12,000 for the business, in addition to the other promised payments and promised conduct, the plaintiffs' claim is that Frederick lost the $12,000 because, under the terms of the sale, he lost the business for which he had paid the $12,000, when it reverted to his mother because he predeceased her. It was, therefore, a loss from a sale between a mother and her son. If a son paid his mother a substantial sum for a conveyance by her to him of a life estate in property, and died a week later, the loss resulting from what

turned out to be a bad bargain would be a loss from a sale between a mother and her son. And so is the asserted loss in the instant case.

JONES, Chief Judge (dissenting).

I cannot agree to the conclusions reached by the majority. We are here concerned with a claim for refund of an alleged overpayment of income taxes. For reasons set out below, I regard the $36,346.64 remaining in the drawing account as income to the decedent, Frederick W. Buchholz, during the period January 1 to November 22, 1944, and nondeductible for income tax purposes.

After the death of Gustav Buchholz, Christina and her son Frederick entered into an agreement, the terms of which are set out in finding 5. Under this agreement Frederick conducted the business as a sole proprietorship until his death on November 22, 1944. The net profits of the business belonged to Frederick, and were credited on the books of the business to a personal drawing account set up in his name. From this account he withdrew the sums so credited whenever and in whatever amount he desired. It is not asserted that Frederick failed to report or pay tax on the net earnings of the business for any year period to 1944, and the only taxable year here involved is January 1 to November 22, 1944.

On January 1, 1944; Frederick's drawing account showed a balance of $35,525.14 carried forward from previous years. Thereafter as a result of adjustments of reserves for taxes for prior years there was transferred to the drawing account an additional $33,330.42. Thus there were in the drawing account during 1944 amounts totaling $68,855.56 representing profits from prior years, exclusive of net earnings for 1944.

The earnings of the business from January 1 to November 22, 1944, were $81,459.-28. This amount was included as part of Frederick's gross income for such period in the return filed by his executors on March 15, 1945. Of the $81,459.28 earnings, $31,255.80 was credited to Frederick's drawing account between January 1 and

November 22, 1944. Also, there was an additional $1,409.51 credited to the drawing account after his death, as a result of bookkeeping adjustments, which represented 1944 earnings for the period prior to his death.[1] The result was a total of $101,520.-87 in his drawing account during 1944, derived from profits both for 1944 and prior years, before any deduction of withdrawals during that period. During the period here in question Frederick made withdrawals totaling $65,174.23, which reduced the drawing account balance to $36,346.64 as of the date of his death.

Upon his death Frederick was survived by his mother, Christina. Acting pursuant to the 1925 agreement Christina took over the assets and all of Frederick's interest in the business, including cash on hand and in the bank. Under this agreement his rights to assets of the business, cash on hand or otherwise, were extinguished by his death. Included in this category was the drawing account balance of $36,346.64, representing unwithdrawn profits at the time of his death. This right was twice asserted by his executors in judicial proceedings in the District of Columbia, and both times they were unable to recover the $36,346.64 remaining in his drawing account at the time of his death. National Metropolitan Bank of Washington v. Doherty, 82 U.S.App. D.C. 399, 160 F.2d 580, was a civil action against the estate of Christina, who died shortly after Frederick, and In re Estate of Christina Buchholz, Admin. No. 64690, D.C., was a probate proceeding for the administration of Christina's estate. It should be noted that the holdings in these cases are merely to the effect that Frederick's *estate* is not entitled to the $36,346.-64. I am unconvinced that these holdings are tantamount to a determination that the funds in question are not taxable as income to the decedent during the period January 1 to November 22, 1944.

As noted above the entire earnings of the business during the period here in-

volved, in the amount of $81,459.28, were reported by Frederick's executors on his Federal income tax return for that period and the tax paid thereon. Thereafter a claim was filed with the Collector of Internal Revenue for refund of an alleged overpayment, asserting in part that the $81,459.28 earnings of the business from January 1 to November 22, 1944, was income not to Frederick but to Christina. It was also claimed that Frederick was entitled to a deduction of $36,346.64 from gross income for that period, as a cost of the 1925 contract. Both of these claims were rejected by the Government. The petition was then filed in this court.

As before the Collector, plaintiffs' petition states a claim for recovery of the entire amount of taxes paid for the January 1 to November 22, 1944, period, again relying in part on the assertion that no part of the $81,459.28 was includible as income to Frederick. The argument is also made that in any event Frederick is entitled to claim a deductible loss under section 23(e) of the Internal Revenue Code for this taxable period in the amount of $36,346.64 remaining in his drawing account at the time of his death. The argument with reference to the $81,459.28 has apparently been abandoned. Such a claim is untenable and should be denied.

With respect to the $36,346.64, plaintiffs claim first that it was not income to Frederick but merely unwithdrawn profits which never came into his possession but passed instead to Christina. It is urged alternatively that if such amount was properly includible as income under section 22, Internal Revenue Code, 26 U.S.C. § 22, as gross income for the period in question, then upon his death and as a result of the contract of 1925, he suffered a loss in that amount deductible under section 23(e) (1) or (2).

Let us turn first to the question of whether the drawing account balance is income. As I understand the 1925 agreement and

---

[1] All or substantially all of the 1944 profits for the period prior to Frederick's death which were not actually transferred to the drawing account were used to set up a reserve for Federal income taxes and were apparently paid to the Government as advance payments on Frederick's 1944 tax liability. These constitute the major portion of the actual moneys plaintiffs are here seeking to recover.

operation thereunder, whether or not given profits were transferred to the drawing account has no bearing on the question of tax liability therefor. When the business showed a net profit for any taxable period, Frederick was taxable thereon regardless of whether any of those profits were taken out of the business, and regardless of whether such profits were formally transferred to the drawing account. Thus as to any taxable period it was the realization of profits that was significant in computing gross income and not the subsequent transfer to a drawing account. *A fortiori* the mere failure to withdraw such profits from the drawing account was unimportant, since the character of income under section 22[2] had attached independently of transfer to such an account. They were no less income from the fact that Frederick had not taken them from the account when he died. Nor did the further fact that, pursuant to the 1925 contract, Christina took over Frederick's interest in the business upon his death, deprive them of their character as income to the decedent during his life under section 22.

Furthermore, plaintiffs' argument that the $36,346.64 should be excluded from computation of January 1–November 22, 1944, income, assumes that such amount was actually included in the tax return filed for that period. Such assumption is misleading and indeed only partially correct. The evidence shows that at most no more than $32,665.31 of the total 1944 profits ($81,459.28) for the period prior to Frederick's death was ever transferred to the drawing account. Thus well over three thousand dollars remaining in the account at the time of Frederick's death was derived from profits for prior years. It seems abundantly clear that the $36,346.64 figure can have no significance in determining Frederick's income under section 22.

The more serious question is whether plaintiffs are entitled to a *deduction* of $36,346.64 under either section 23(e) (1), (loss sustained if incurred in trade or business) or section 23(e) (2) (loss sustained if incurred in any transaction entered into for profit though not connected with the trade or business) for the period January 1 to November 22, 1944.

Defendant contends, and I think correctly, that even if such amount were otherwise deductible under section 23(e) (1) or (2), the allowance of such a deduction is prohibited by section 24(b) of the Internal Revenue Code which provides:

"§ 24 * * * (b) Losses from sales or exchanges of property

"(1) Losses disallowed. In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

"(A) Between members of a family, as defined in paragraph (2) (D); * * *

"(2) * * * (D) The family of an individual shall include * * * ancestors, and lineal descendants;"

It should be noted at the outset that this section states an absolute prohibition, not merely a presumption, against the allowance of losses on any sales or exchanges of property between members of a family. McWilliams v. Commissioner, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750.

Plaintiffs' sole answer to the contention that section 24(b) is a bar to their claim is that the alleged loss in question did not arise from a "sale or exchange of property". Plaintiffs urge that such alleged loss resulted from a forfeiture, rather than a "sale or exchange", citing in support Gaius G. Gannon, 16 T.C. 1134, and Hutcheson v. Comm., 17 T.C. 14. These cases concerned losses incurred by withdrawing partners of a large law firm in Texas. The partnership articles provided that upon the death of any partner or upon his withdrawal from the partnership and from the practice of law, such partner would be entitled to receive his agreed share of the partnership assets; but in the event that any partner voluntarily withdrew from the partnership and continued in active practice of the law, no compensation would be paid to such a partner for his interest in the firm. The

---

2. This section defines gross income.

taxpayers in each case were partners who voluntarily withdrew and continued in the active practice of law. The Tax court held that under the partnership articles the withdrawing partners had forfeited their respective interests in the assets of the firm and had thereby suffered a loss deductible under section 23(e).

The Tax Court rejected respondent's contention in the Gannon case that the loss was occasioned by a "sale or exchange" of a capital asset within the meaning of sections 23(g) and 117, giving as reasons therefor (1) that the taxpayer "lost this asset without receiving any consideration", and (2) there "was not a sale or exchange as those words are ordinarily used." In the Hutcheson case the Tax Court followed Gannon without further discussion of this question.

Even if we were bound by the holdings in the Gannon and Hutcheson cases and the construction there given to the "sale or exchange of a capital asset" under sections 23(g) and 117, we do not believe they are available here to support plaintiffs' construction of "sales or exchanges of property, directly or indirectly * * * Between members of a family * * *" under section 24(b). The Tax Court apparently acted on the assumption that under sections 23(g) and 117 the terms "forfeiture" and "sale or exchange" were mutually exclusive. But cf. Commissioner v. Paulson, 8 Cir., 1941, 123 F.2d 255 in which a "forfeiture" of realty under a contract of sale by the vendee in default was held to be a "sale or exchange" within the meaning of sections 23(g) and 117. Without further considering the validity of such a distinction and assuming its applicability under section 24, we are nevertheless unable to find such a forfeiture in the instant case.

Forfeiture carries with it the connotation of offense or delinquency, penalty, default or negligence; at the very least it would seem to arise from failure to perform some duty owed, contractual or otherwise. Ballentine, Law Dictionary, 2d ed.; 1 Bouvier's Law Dict., Rawle's Third Revision; Webster's New International Dictionary, 2d ed. There is an inherent presupposition of some degree of control in the one against whom the forfeiture operates over the operative acts, omissions, or events giving rise to the forfeiture. Thus in the Gannon case, supra, the purpose of the articles of partnership was obviously to establish and maintain the practice of law in partnership. Withdrawal of individual partners was contrary to this purpose. Therefore, drastic consequences were agreed to as a deterrent to the happening of such a contingency. Incurrence of these consequences, however, was completely within the control of any individual partner. Therefore the characterization of the loss suffered by a withdrawing partner as a "forfeiture" was justified.

No such justification exists in the instant case. The contingency from which the loss in question arose was that Frederick predeceased his mother. There was no element of penalty involved, and most certainly no control in either party to the agreement over the occurrence of the contingency. The provision providing for the passage of Frederick's assets to Christina upon occurrence of the uncontrollable contingency that he predecease her was hardly by way of recompense to one party for some dereliction of a duty owed by the other. On the contrary, it would seem clear that such a possibility was contemplated by the parties as being beyond their control and was therefore a factor in determining the amount of consideration given for the property interest at the time of transfer. We have no hesitation, therefore, in concluding that the holding in the Gannon and Hutcheson cases has no applicability here.

The assets of the business were transferred from Christina to Frederick under the contract of 1925. As a part of the consideration therefor Frederick agreed that all assets of the business and all his interest therein should become the property of Christina if he predeceased her. This contingent obligation by Frederick was assumed by him as part of the consideration required for the acquisition of interest in the hotel and restaurant business. At the time of his death, Christina surviving, Frederick's interest in the business included $36,346.64 derived from profits mostly

from 1944 and partly from prior years. The interest passed to Christina and became her property. That there was a transmutation of property (i. e., "any interest or aggregate of interests which are of a kind that normally have an economic value * * *," Restatement of the Law of Property, Intro. Note) is beyond question; that consideration was given of some price or recompense in value for such property is the basis of plaintiffs' claim. We are unable to say that the loss of that interest did not result from a "sale or exchange, directly or indirectly," within the meaning of section 24(b), between Frederick and his mother. We must conclude, therefore, that section 24(b) (1) (A) prohibits the recognition of any loss otherwise deductible under section 23.

In addition, I feel that the evidence fully justifies findings of fact to support the conclusion reached above. Especially I would strike the last clause of finding 12, "if withdrawn prior to his death." This finding is not justified by the record. Clearly during the life of the contract all funds were within the complete control of Frederick Buchholz.

With regard to plaintiffs' claim for a deduction of $12,010.97, it seems to me that if Frederick Buchholz, as is claimed, invested this amount of his own money at the beginning of the contract with his mother, that sum should be deducted as a loss when at his death the entire properties and funds reverted to his mother.

The record is not clear as to whether the items of Gustav's estate obligations were paid out of Frederick's personal funds or were merely checked out of the funds of the estate or withdrawn from profits of the hotel and restaurant business.

I would refer this issue to the commissioner to take further testimony limited to this question. If it develops that the estate obligations aggregating $12,010.97 were advanced by Frederick and not later recouped, I would allow the deduction of this sum as a loss. If they were merely checked out of the business operating funds, or if advanced by Frederick and later recouped from the operation of the hotel and restaurant, I would dismiss the entire petition.