JOHN B. AND GWENDOLEN N. SHETHAR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60333.    Filed September 25, 1957.

*Paul C. Guth, Esq.,* and *Henry Brach, C. P. A.,* for the petitioners.
*Clarence P. Brazill, Esq.,* for the respondent.

## OPINION.

RAUM, *Judge:* We are asked to decide whether the losses in question resulted from sales of securities "indirectly" between members of a family. Sec. 24 (b) (1) (A), I. R. C. 1939.[1] Contrary to petitioners' contention, we think that this case is similar to *McWilliams* v. *Commissioner*, 331 U. S. 694, and that a like result is called for here.

In the *McWilliams* case the husband managed both his and his wife's property. On several occasions he gave to his broker orders "to sell certain stock for the account of one of the two, and to buy the same number of shares of the same stock for the other, at as nearly the same price as possible. He told the broker that his purpose was to establish tax losses. On each occasion the sale and purchase were promptly negotiated through the stock exchange, and the identity of the persons buying from the selling spouse and of the persons selling to the buying spouse was never known. Invariably, however, the buying spouse received stock certificates different from those which the other had sold." *McWilliams* v. *Commissioner, supra,* at 695. The Supreme Court held that section 24 (b) (1) (A) was applicable.

Although there are some differences in the facts, we think that the instant case presents essentially the same situation. In each case, a spouse owned securities that had declined in value and wished to establish a tax loss without letting them leave the family. Had he sold them directly to his wife, the loss would have been disallowed by

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D) ;

\* \* \* \* \* \* \*

(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purpose of determining, in applying paragraph (1), the ownership of stock—

\* \* \* \* \* \* \*

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants ;

section 24 (b) (1) (A). Instead, in the *McWilliams* case, he sought to achieve the same result *indirectly* by selling the securities on the market and having his spouse buy an identical number of shares on the market. This, the Supreme Court held, was also governed by section 24 (b) (1) (A), which disallowed losses on sales between members of a family whether they are made "directly or indirectly." The present case differs primarily in that the order of the transaction was reversed: the purchasing spouse acquired the same number of identical shares before the other spouse sold his shares. We think that this is not a crucial difference. The important thing is that the sale and purchase were parts of a single prearranged plan, upon the consummation of which one spouse emerged owning an identical number of shares of the same stock which the other spouse had owned in the first place. The *McWilliams* case makes clear that it is immaterial that the parties utilized the facilities of the market place to achieve that result—a result that is denied tax consequences by section 24 (b) (1) (A) since the transaction is an "indirect" sale between members of a family.

Petitioners point to the fact that in the present case it was stipulated that Gwendolen managed her own property, and argue that this distinction requires a holding opposite to that reached in *McWilliams* v. *Commissioner, supra.* The difference is more verbal than real. The evidence indicates that John conceived of the plan, placed the orders, and made the necessary inquiries. Furthermore, petitioners incorrectly assume that the active cooperation of both spouses in the formulation and execution of a plan to sell securities in order to create losses for tax purposes negates the possibility that such sales are indirect sales. That circumstance is in no way inconsistent with the conclusion that sales have been made "indirectly" between the spouses.

Petitioners also argue that the length of time separating the purchases from the sales precludes our holding that the sales were indirectly between one spouse and the other. There is little merit to this argument. The operation of section 24 (b) does not depend upon the simultaneous execution of the transaction of purchase and sale. Cf. *Commissioner* v. *Kohn*, 158 F. 2d 32 (C. A. 4). Moreover, it was pointed out in *McWilliams* v. *Commissioner, supra*, at 702, that if section 24 (b) were construed so as to exclude sales made on a stock exchange because it did not set forth any prescribed interval of time within which the sale and purchase must take place, the section would be converted "into a mere trap for the unwary."

Petitioners argue finally that in any event the "over-the-counter" sale must be treated differently from the sale through the stock exchange. However, there is nothing in section 24 (b) (1) (A) or in

the *McWilliams* opinion which indicates that indirect sales of securities can only be accomplished through a stock exchange. Petitioners formulated their plan attaching little if any significance to the fact that the Canadian shares were traded "over-the-counter," and they have not convinced us that we must now attach greater significance to that fact. Where the question is whether there has been an indirect intrafamily sale of securities we do not think the answer can be found in the label given to the particular market used to effectuate the sale.

If section 24 (b) (1) (A) is to accomplish its purpose, indirect sales cannot be limited to a fixed number of known methods of creating losses. The problem in this case is whether the purchase by one spouse was so related to the sale by the other spouse that the loss from the latter must be disallowed because it resulted from an indirect sale by one spouse to the other. In this case husband and wife cooperated in the development and execution of a plan designed to create losses deductible for tax purposes and at the same time preserve the family position in the very securities that were to be sold to create the losses. Under this plan they determined the securities to be sold, and when and how they should be sold. The same number of certain shares purchased by one spouse was sold by the other. The purchases and sales were so closely connected in time that no significant fluctuation in the price of the securities occurred between the time of the purchases and the sales. Petitioners viewed their purchases and sales as all part of one transaction, and we have been shown no reason why we must blind ourselves to reality and treat the various purchases and sales as totally unconnected events.

It is of little importance that petitioners may not have known at the outset the exact moment at which they would make their sales. The fact is that they intended to make the sales as promptly as they could upon receiving reassuring tax advice and upon being satisfied that market conditions warranted the sales. The significant thing is that the subsequent sales were planned in such manner that, as a result of the anticipatory purchases, each spouse, in the end, would own the identical number of shares of the same stock which the other spouse owned in the first instance. The opinion in the *McWilliams* case cannot fairly be read without concluding that the transactions before us are covered by the statute.

Accordingly we hold that section 24 (b) (1) (A) forbids giving effect to the losses sustained upon the sales of the Amerada and Canadian shares.

*Decision will be entered for the respondent.*