T.C. Summary Opinion 2008-143

UNITED STATES TAX COURT

SHERMAN L. AND DAISY SPIVEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12198-06S.              Filed November 13, 2008.

Sherman L. and Daisy Spivey, pro sese.

<u>Bradley Plovan</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On March 24, 2006, respondent mailed petitioners a notice of deficiency with respect to their taxable years 2002, 2003, and 2004. In that notice, respondent determined the following deficiencies, additions to tax for late filing, and accuracy-related penalties:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|---|---|---|---|
| 2002 | $11,470 | $2,460.00 | $2,294.00 |
| 2003 | 10,142 | 2,248.25 | 2,028.40 |
| 2004 | 7,627 | 289.90 | 1,525.40 |

These deficiencies resulted from respondent's disallowance of the following expenses:

| Disallowed Expense | Taxable Years | | |
| | 2002 | 2003 | 2004 |
|---|---|---|---|
| Schedule E--Supplemental Income and Loss--Rental Real Estate | $19,641 | $21,894 | $24,013 |
| Schedule C--Profit or Loss From Business | 18,074 | 17,075 | 10,276 |
| Schedule A--Itemized Deductions--Job Expenses and Other Miscellaneous Deductions | 11,856 | 11,096 | 10,775 |

The Schedule A job expenses and other miscellaneous deductions shown above comprised two categories of expenses, as follows:

| Expense Category | Taxable Years | | |
| | 2002 | 2003 | 2004 |
| --- | --- | --- | --- |
| Unreimbursed employee business expenses | $11,856 | $10,996 | $10,745 |
| Tax preparation fees | 35 | 100 | 30 |
| Total before 2-percent reduction[1] | 11,891 | 11,096 | 10,775 |

[1]Sec. 67(a) reduces miscellaneous itemized expenses by 2 percent of adjusted gross income.

Petitioners attached Forms 2106-EZ, Unreimbursed Employee Business Expenses, to their income tax returns for the years in issue. The Forms 2106-EZ summarized the unreimbursed employee business expenses that petitioners deducted on their Schedules A, Itemized Deductions, as shown below:

| Business Expenses | Taxable Years | | |
| | 2002 | 2003 | 2004 |
| --- | --- | --- | --- |
| Parking fees | $480 | $480 | $480 |
| Other business expenses | 4,663 | 4,102 | 4,036 |
| Meals and entertainment expenses[1] | 10,328 | 9,868 | 8,898 |
| Multiplied by deduction rate[2] | x 65% | x 65% | x 70% |
| Deduction for meals | 6,713 | 6,414 | 6,229 |
| Total expenses | 11,856 | 10,996 | 10,745 |

[1]Petitioners included cellular phone expenses in the meals and entertainment category.

[2]Sec. 274(n) allows a deduction for meal and entertainment expenses at a 50-percent rate. However, sec. 274(n)(3) increases that rate gradually to 80 percent during 1998 to 2008 for employees who are subject to Department of Transportation (DOT) limitations on hours of service. Petitioners claimed the higher DOT rate.

At trial, the Court received into evidence petitioners' exhibit entitled "Miscellaneous Statements" that purportedly detailed their unreimbursed employee business expenses for each

year.  Petitioners offered no other documentation or records to substantiate the amounts on the miscellaneous statements.  As the figures below show, petitioners' calculations for meals and cellular phone expenses in 2003 and 2004, and their calculation of other expenses in 2003, do not agree with the amounts that petitioners claimed on the Forms 2106-EZ attached to their tax returns.  Petitioners did not explain the differences.

| | Taxable Years | | |
|---|---|---|---|
| Expenses per "Miscellaneous Statements" | 2002 | 2003 | 2004 |
| **Parking Fees** | | | |
| ($40 x 12 months) | $480 | $480 | $480 |
| **Meals and Cellular Phone Expenses** | | | |
| Meals | | | |
| (2002: $35 x 268 trips) | | | |
| 2003: $25 x 268 trips | | | |
| 2004: $25 x 268 trips) | $9,380 | $6,700 | $6,700 |
| Cellular Phone | | | |
| ($79 x 12 months) | 948 | 948 | 948 |
| Total meals and cellular phone expenses | 10,328 | 7,648 | 7,648 |
| **Other Expenses** | | | |
| Union dues | $1,004 | $1,004 | $1,014 |
| New uniforms (jackets, shirts, pants, ties, hats, and sweaters) | 525 | 527 | 530 |
| Uniform maintenance ($24 x 38 weeks) | 912 | 912 | 912 |
| Safety shoes ($109 x 3 pairs) | 327 | 327 | 330 |
| Safety glasses (2 pairs per year) | 325 | 325 | 327 |
| Grooming (2002: $15 x 37 weeks) (2003: $20 x 37 weeks) (2004: $25 x 37 weeks) | 555 | 740 | 925 |

| Supplies (briefcase, security locks, laptop, calculators, pens) | 1,000 | -0- | -0- |
|---|---|---|---|
| Total other expenses | 4,663 | 3,835 | 4,036 |

Petitioners brought to trial receipts and records that supported some of the disallowed deductions. Respondent stated that if given time to review the records and discuss the adjustments with petitioners, the parties might reach a settlement on many of the items. The Court agreed, the parties met, and afterwards, the parties filed a supplemental stipulation.

According to the supplemental stipulation, the parties resolved all issues related to the Schedule E rental property. They also resolved all issues regarding the Schedule C business expenses except one: whether petitioners are entitled to deduct depreciation on two computers they had purchased in prior years. Petitioners had not claimed a deduction in the years at issue; however, at trial they asserted they were entitled to depreciation.

Related to Schedule A job expenses, respondent allowed union dues of $992.92, $1,019.19, and $1,399.00 for 2002, 2003, and 2004, respectively, but continues to disallow deductions for the remainder of petitioners' unreimbursed employee business expenses for the 3 years in issue, and tax return preparation fees for 2003 and 2004.

Thus, in summary, after concessions, the issues for decision are whether petitioners are: (1) Entitled to deduct depreciation expenses for 2002, 2003, and 2004 for two computers they purchased in prior years for use in their Schedule C business; (2) entitled to deduct unreimbursed employee business expenses for the years in issue in addition to union dues that respondent has already conceded; and (3) entitled to deduct tax return preparation fees for 2003 and 2004.

## Background

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in Maryland.

In 1988 petitioner wife (Ms. Spivey) started a computer education and training business called Small Bytes. She operated Small Bytes out of their home and provided computer instruction to children enrolled at daycare centers and afterschool programs near petitioners' home.

In 1999 Ms. Spivey bought a laptop computer for $1,500 from CompUSA, Inc., for use in her business. Ms. Spivey promptly began using the computer for Small Bytes and continued to use the laptop for Small Bytes during the taxable years in issue. In 2000 Ms. Spivey purchased another laptop computer for use in her business. This one was from Best Buy, where she paid

approximately $1,900. Again she promptly began using the computer and continued to use it during the years in issue. Ms. Spivey did not claim a depreciation expense on Schedule C with respect to her business for 2002, 2003, or 2004.

During the years at issue petitioner husband (Mr. Spivey) served as a railroad passenger conductor[1] for Amtrak and Maryland Area Regional Commuter service (MARC) on the Penn line.[2] At the time of the trial he had worked as a conductor for 35 years. He started with Penn Central in 1972, and later that year, when Amtrak took over Penn Central's passenger service, Mr. Spivey became an Amtrak employee.

In 2002 Mr. Spivey worked mainly on Amtrak's Washington, D.C.--New York, New York route. He also worked on the entire length of the MARC Penn line route that runs, with intermediate stops, from Washington Union Station to Baltimore Penn Station and on to Perryville Station (Maryland). During 2003 and 2004

---

[1] The primary responsibility of a railroad conductor is to make sure passengers have paid for their travel. A conductor may sell, punch, or collect tickets. The number of conductors on Amtrak and MARC trains varies depending on the number of cars that make up the train. A supervising or senior conductor may also be on board.

[2] Under an operating agreement between MARC and Amtrak, Amtrak provides engineers, conductors, and repair and maintenance personnel to MARC for the Penn Line commuter trains between Perryville, Baltimore Penn Station, Union Station, and intermediate stations. When working on Amtrak trains personnel wear Amtrak insignia on their uniforms, and while on MARC trains they wear MARC insignia.

Mr. Spivey increased the number of his work trips on the MARC line while decreasing his trips on Amtrak.

When Mr. Spivey was working his Amtrak schedule, his workday would last 8 to 12 hours.[3]  He would begin the day by driving his car from his residence in Maryland and parking at the Baltimore Washington International Airport (BWI) Station.  He paid $40 per month for a parking pass.  He would then take a train from the BWI Station to Union Station in Washington, D.C., which was his duty station and where his workday would begin.  He worked a daily (not overnight) round trip route between Union Station and New York Penn Station.  For example, he might depart on an 8 a.m. train from Union Station and arrive into Penn Station in New York at approximately 11:30 a.m.  After turning in the money and tickets he had collected to the Amtrak Penn Station office, Mr. Spivey was released from his work duties.  Since he usually arrived near lunchtime, Mr. Spivey would often join other conductors for lunch in one of the nearby restaurants.  He did not bring meals from home.  Mr. Spivey would also spend a good part of his time in the Amtrak employee lounge.  Employees called the lounge the "Quiet Room", though it did not have a suitable place where employees could sleep.  Mr. Spivey typically did not engage in substantial sleep or rest during his layover in New

---

[3] To determine the total hours of "work" per day, we excluded the number of hours for Mr. Spivey's personal commuting time between his residence and his duty station.

York.  After the layover, which lasted for sometimes 1 but usually around 3 to 4 hours, Mr. Spivey would work on a return train from New York to Union Station.  He would then return home by reversing his morning commute; i.e., he would take a train from Union Station to BWI Station and then drive his car to Catonsville.

When Mr. Spivey was working his MARC schedule, his workday might last from 11 to 13 hours.  He would drive from his home in Catonsville to Baltimore Penn Station, which was his duty station.  Parking for MARC employees was free at Baltimore Penn Station.  Mr. Spivey would typically work two round trip routes each day (no overnight trips).  He began with a round trip between Baltimore Penn Station and Union Station in Washington, D.C.  After a short layover in Washington Union Station, he would return to Baltimore, where he could have around a 2-hour layover.  At the conclusion of each leg of the trip, Mr. Spivey would turn in the money and tickets he had collected to the local Amtrak office, which under an agreement served as an agent for MARC.  Both Baltimore's Penn Station and Washington's Union Station had quiet rooms for employees.  Mr. Spivey did not normally sleep during his layovers in Baltimore or Washington.  In the afternoons Mr. Spivey would work the round trip route from Baltimore Penn Station to Washington Union Station.  On occasion he might work on a train that was going from Union Station to the

Perryville Station, which was approximately 40 miles northeast of Baltimore. He would then return to Baltimore Penn Station on a MARC train. Once back in Baltimore Penn Station, he would end his workday and commute by car to his residence in Catonsville.

To compute his meals deduction for the years at issue, Mr. Spivey used a per diem rate of $35 for meals when working on the Amtrak trains and a per diem of $25 when working on MARC trains. The $35 figure represented Mr. Spivey's understanding of the Federal per diem allowance for meals for transportation workers. The $25 was apparently Mr. Spivey's attempt to reduce the per diem for the shorter time of his MARC layovers. Neither Amtrak nor MARC reimbursed Mr. Spivey for his meals.

Amtrak and MARC each required Mr. Spivey to wear their uniform, insignia, and emblems when working on their trains. To accomplish this, Mr. Spivey would merely remove his Amtrak insignia and emblems and replace them with MARC insignia and emblems. Amtrak's uniform requirement, which also applied to MARC employees, included a provision that employees maintain their uniforms through professional laundering and pressing. While Amtrak provided an allowance for uniforms, Amtrak deducted from Mr. Spivey's pay an amount for uniform items that Mr. Spivey decided to purchase in excess of the allowance, or any items that he had to purchase because of loss or excessive wear.

In addition to his uniform, Amtrak required Mr. Spivey to wear safety glasses. Amtrak contracted with a specialty vendor who sold the glasses to rail workers at Union Station. The glasses had safety lenses with protective shields which, when worn, protected the entire upper half of the wearer's face. Mr. Spivey paid $325 per year to purchase two pairs of glasses during each year at issue.

Although neither Amtrak nor MARC required Mr. Spivey to purchase any other supplies for his work, and they did not require him to carry a cellular phone for business, on occasion Mr. Spivey would purchase various items such as pens and calculators to use in his job as a conductor. Additionally, Mr. Spivey belonged to a union, and Amtrak deducted union dues from his paycheck.

In the taxable years at issue, petitioners completed most of the work involved in filling out their tax returns, however, they hired a tax preparer to complete the returns. They paid $35, $100, and $30 in tax preparation fees for 2002, 2003, and 2004, respectively.

## Discussion

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions

are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed on a return. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992); Wilson v. Commissioner, T.C. Memo. 2001-139.

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain records, and cooperate fully with respondent's reasonable requests. Petitioners therefore bear the burden of proof. With respect to penalties and additions to tax, section 7491(c) places the burden of production on the Commissioner.

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Generally, the performance of services as an employee constitutes a trade or business. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). A taxpayer must maintain records sufficient to substantiate the amounts of the deductions claimed. Sec. 1.6001-1(a), Income Tax Regs. For such expenses to be deductible, the taxpayer must not have the right to obtain reimbursement from his employer. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), affg. T.C. Memo. 1984-533.

If a taxpayer establishes that an expense is deductible but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274 overrides the Cohan rule with regard to certain expenses. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274 requires stricter substantiation for travel, meals, and listed property such as computers. Section 274(d) requires taxpayers to provide adequate records or sufficient other evidence establishing the amount, time, place, and business purpose of the expense to corroborate the taxpayer's statements. Even if such an expense would otherwise be deductible, section 274 may still prohibit a deduction if the taxpayer does not have sufficient substantiation. Sec. 1.274-5T(a), Temporary Income Tax Regs., supra.

For employees in the transportation industry,[4] the Internal Revenue Service (Service) publishes an annual revenue procedure that offers a per diem exception to the above substantiation rules for meals and incidental expenses (M&IE). See Rev. Proc. 2002-63, sec. 4.04, 2002-2 C.B. 691, 694. Under the exception, transportation industry employees may deduct their meals using the published M&IE rate, in lieu of claiming actual expenses and maintaining records. Id. For context, the rate for meal and incidental expenses was $40 per day for the first part of 2003. Id. sec. 4.04(2).

Keeping in mind these well-established principles, we now turn to decide whether the Spiveys may deduct the disputed business expenses.

I. Schedule C Depreciation Expense for Computers

Following concessions reflected in the supplemental stipulation of facts, Ms. Spivey maintains that she is entitled to a depreciation deduction for two laptop computers she purchased for use in her business, Small Bytes. Ms. Spivey's laptop computers are an ordinary and necessary expense under section 162 for her computer training business that entails visiting clients at offsite locations.

---

[4] The definition of transportation industries employees relevant here includes workers who (a) directly move people by train, and (b) who regularly travel away from home. Rev. Proc. 2002-63, sec. 4.04(4), 2002-2 C.B. 691, 694.

Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business. The purpose of the deduction for depreciation is to allow the taxpayer to recover over the useful life of the property its cost or other basis. Unites States v. Ludey, 274 U.S. 295, 300-301 (1927).

Pursuant to section 168(a), taxpayers determine the depreciation deduction by using the applicable depreciation method, applicable convention, and the applicable recovery period. The period for depreciation of an asset begins when the taxpayer first places the asset into service. Sec. 1.167(a)-10(b), Income Tax Regs. Deductions for depreciation must be taken in the year in which depreciation occurs and cannot be recouped in subsequent years by reason of a taxpayer's failure to deduct the depreciation allowance in prior years. Sec. 1.167(a)-10(a), Income Tax Regs. Generally, depreciation is computed by using the cost of the property as its basis. Secs. 167(c), 1011, 1012; sec. 1.167(g)-1, Income Tax Regs.

Computers used exclusively in a trade or business are depreciable using the Modified Accelerated Cost Recovery System (MACRS) over a 5-year life. For such 5-year property, MACRS uses an accelerated depreciation schedule for the first 3 years, converting to straight-line for the last 3 years. MACRS also

uses a half-year convention, computing depreciation for a half year in year 1 and a half year in year 6.

Section 280F (d)(4)(A) subjects computers to special substantiation requirements of section 274 as "listed property". However, section 280F(d)(4)(B) provides an exception, subject to certain requirements, for computers that taxpayers use exclusively in their business. Whalley v. Commissioner, T.C. Memo. 1996-533. On the basis of Ms. Spivey's uncontroverted testimony, and the nature of her business, a computer training service, we believe that Ms. Spivey used the computers exclusively in her business. Further, Ms. Spivey presented credible evidence through the receipts from CompUSA, Inc., and Best Buy to adequately substantiate her bases. See sec. 6001. Thus, to the extent section 168 allows depreciation expense deductions for the laptop computers in the years at issue, we hold that petitioners are entitled to deduct the allowable depreciation expenses for 2002, 2003, and 2004.

II.  Schedule A--Unreimbursed Employee Business Expenses

For unreimbursed employee business expenses, the initial bar is whether the taxpayer received reimbursement or had the right to receive reimbursement from his employer. Orvis v. Commissioner, 788 F.2d at 1408. In other words, a taxpayer may not deduct unreimbursed expenses if the employer maintains a reimbursement plan and the employee fails to seek reimbursement

for work-related expenses.  Leamy v. Commissioner, 85 T.C. 798, 810 (1985).  Mr. Spivey did not receive reimbursement and was not eligible to receive reimbursement.  We now discuss the specific categories of Mr. Spivey's unreimbursed expenses.

### A.  Parking Fees

Mr. Spivey deducted $480 per year during 2002-04 to park in a garage at the BWI Station on the days he worked for Amtrak.  He would drive from his residence, park at BWI, and then continue his commute to Washington, D.C. Union Station where he reported to work.  He would reverse the commute on his way home.  Mr. Spivey claimed that he paid the parking fees by check but did not produce any receipts or canceled checks.  Thus, Mr. Spivey did not satisfy the substantiation requirements of section 274.  Moreover, parking fees, similar to the cost of driving to and from work, are personal expenses and therefore are not deductible.  Sec. 262(a); Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); sec. 1.162-2(e), Income Tax Regs.

### B.  Meals Purchased While Away From Home

As noted above, Mr. Spivey was correct in that the Service permits employees in the transportation industries to use a per diem rate.  See Rev. Proc. 2002-63, sec. 4.04.  However, before we discuss the amount, we must first decide the threshold issue of whether Mr. Spivey's meals qualify for a deduction.

Section 162(a)(2) allows taxpayers to deduct traveling expenses, including meals, if the taxpayer is "away from home" while traveling for a trade or business. The reason for Mr. Spivey's travel was his job, which required him to work on railroad passenger cars traveling between cities. As a result, the sole issue is whether Mr. Spivey was "away from home" when he purchased his meals. Overnight nonlocal business travel normally fits easily into the definition of "away from home". See Williams v. Patterson, 286 F.2d 333, 335 (5th Cir. 1961). However, Mr. Spivey's travel was not overnight. He worked long days compounded by a long commute, but he completed his trips within 1 day. Section 262 prohibits deductions for personal expenses, which include meals workers buy during a workday. Sec. 262(a); Commissioner v. Flowers, supra at 473-474; sec. 1.162-2(e), Income Tax Regs. Therefore, the key is determining under what circumstances taxpayers who travel away from home on business for shorter than overnight may nonetheless deduct their meals.

On this point, the Commissioner's position is found in Rev. Rul. 75-170, 1975-1 C.B. 60.[5] The Service allows railroad

---

[5] Rev. Rul. 75-170, 1975-1 C.B. 60, updates and restates Rev. Rul. 61-221, 1961-2 C.B. 34, which the Commissioner based on the division in Williams v. Patterson, 286 F.2d 333, 340 (5th Cir. 1961), where the Court of Appeals for the Fifth Circuit concluded that the sleep or rest rule was the "correct rule". See Williams also for excellent histories of the development of
(continued...)

employees to deduct the cost of their meals when a layover requires substantial sleep or rest because although the absence is less than 24 hours, the employees have in effect met the "away from home" requirement for deducting traveling expenses under section 162(a)(2). Rev. Rul. 75-170, supra. Conversely, the Service will disallow a deduction when a layover is of sufficient time to eat but too brief to require substantial sleep or rest because such intervals are not the equivalent of traveling away from home. Id. These principles are known as the "sleep or rest rule".

In United States v. Correll, 389 U.S. 299, 302-303 (1967), the Supreme Court determined that the Commissioner's sleep or rest rule detailed in Rev. Rul. 61-221, 1961-2 C.B. 34, provided substantial fairness and objectivity and avoided wasteful litigation, in part by placing 1-day travelers on a footing similar to that of intracity travelers and commuters who do not have the advantage of a business expense deduction to help pay for their meals. The Court noted that when Treasury regulations and interpretations continue substantially unchanged for a long time, such as this one, the rules take on the imprimatur of congressional approval and therefore have the effect of law. Id. at 305-306. The Court concluded that while one could imagine

---

[5](...continued)
the statutory "away from home" requirement and the Commissioner's "sleep or rest rule".

improvements to the rule, the courts are not responsible for perfecting tax administration. Id. at 306-307. Rather, Congress delegated that authority to the Commissioner. Id. at 307. The proper role of the judiciary is to determine whether a regulation falls within the congressional mandate, which the Court found this rule did. Id.

In the 40 years since that opinion, the judiciary has not changed its approval of the Commissioner's rule, Congress has not amended the statute, and the Commissioner has not altered his stance. Accordingly, we find that the Commissioner's "sleep or rest rule" is a legitimate promulgation that governs Mr. Spivey's situation.

This Court has held that a railroad employee who claimed meal deductions on facts similar to Mr. Spivey's circumstances was not entitled to the deductions. Stevens v. Commissioner, T.C. Memo. 1985-16. In Stevens, the taxpayer worked as a railroad engineer on two separate round trip schedules. On the first schedule, Mr. Stevens worked one round trip that required a 13.5-hour workday including an 8-hour layover. His second schedule necessitated two round trips between the same two cities as his one round trip. The two round trips aggregated to an 11.3-hour workday, which included various layovers, the longest being 2.3 hours. Regarding the first schedule, we found that the 8-hour layover was due to the combination of the railroad's

business schedule and Federal regulations and not due to any need for substantial sleep or rest. Regarding the more arduous two-a-day round trips, we likewise found that the schedule did not require substantial sleep or rest and that in actuality Mr. Stevens did not engage in substantial sleep or rest. We concluded that both of Mr. Stevens's work schedules were in effect no different than those of many other workers whose jobs require long hours but whose meals remain personal expenses.

Addressing Mr. Spivey's facts, we find that Mr. Spivey also worked two separate schedules: One with Amtrak that required one round trip for the day and the other with MARC that usually required two round trips. The Amtrak route encompassed a 3-1/2- to 4-hour run from Washington, D.C., to New York Penn Station, a sometimes 1-hour but more typically a 3- to 4-hour layover, followed by a 3-1/2- to 4-hour return run to Washington, D.C. Mr. Spivey did not claim that he rested, and we find that his workday did not require substantial sleep or rest.

Even though Mr. Stevens worked a longer day than Mr. Spivey, and as a railroad engineer Mr. Stevens had greater public safety responsibilities, we still found that Mr. Stevens's long day was a result of the railroad company's scheduling convenience and not of Mr. Stevens's need for substantial sleep or rest. Likewise, or even more so, we find that Mr. Spivey's workday was not so long or arduous and did not involve public safety to an extent

that required substantial sleep or rest.  Additionally, the fact that Mr. Spivey did not engage in substantial sleep or rest is significant, as is the fact that on some days, he was able to complete the return trip with only a 1-hour layover in New York. Thus, we find Mr. Spivey's layover was for his employer's scheduling convenience and not for Mr. Spivey's needs.  His meals are clearly personal expenses and not deductible meals purchased when traveling away from home on business.  Further, Mr. Spivey's facts closely match the hypothetical in United States v. Correll, supra at 304-305, where the Court noted the "obvious" inequity of permitting a taxpayer to deduct the cost of his lunch simply by making a quick trip from New York to Washington and returning in time for dinner.  In summary, regarding Mr. Spivey's employment with Amtrak, we find that he did not satisfy the sleep or rest rule, and therefore, we hold that he is not entitled to deduct his meal expenses when he traveled for Amtrak because he does not satisfy the away from home requirement of section 162(a)(2).

Regarding Mr. Spivey's meal expenses during his two-a-day round trips for MARC, we also find that he did not satisfy the sleep or rest rule.  For MARC, Mr. Spivey's main layover was at Baltimore Penn Station and the layover lasted for at most 2-1/2 hours.  In Stevens v. Commissioner, supra, Mr. Stevens, similar to Mr. Spivey, also had a separate two-a-day round trip schedule. Even though we found that the two-a-day schedule was more arduous

than a one-a-day schedule, we still found that Mr. Stevens'
layovers, the longest being 2.3 hours, were too brief to allow
substantial sleep or rest.  Ultimately, we concluded that the
breaks were not more than a "mere pause" in the engineer's daily
work routine.  Likewise for Mr. Spivey; his MARC trip layovers
were too brief and did not require substantial sleep or rest and
he did not engage in substantial sleep or rest.  Thus, we
conclude for MARC, similar to Amtrak, that Mr. Spivey's travel
did not satisfy the sleep or rest rule.  Consequently, he was not
away from home for purposes of section 162(a)(2) and therefore
may not deduct his meal expenses.

C.  Cellular Phone Expenses

In certain circumstances, the taxpayer must meet specific
substantiation requirements in addition to section 162.  See sec.
274.  Section 274(d) applies to the use of "listed property" as
defined in section 280F(d), which includes cellular phones.  To
deduct these types of expenses, the taxpayer must provide
evidence that, through adequate records, corroborates the
taxpayer's testimony as to:  (1) The amount of the expenditure or
use; and (2) the business relationship of the taxpayer to each
expenditure or use.  Sec. 274(d).

To satisfy the adequate records requirement of section 274,
a taxpayer must maintain records and documentary evidence that in
combination are sufficient to establish each element of an

expenditure or use.  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Mr. Spivey testified that he deducted his entire cell phone bill, $79 per month, as a business expense.[6]  He provided no records or receipts showing actual expenses to support these cellular phone expenses.  Since Mr. Spivey failed to meet the strict substantiation requirements of section 274(d) with respect to his cellular phone, we sustain respondent's disallowance in full regarding the cellular phone expenses for the years in issue.

D.  Other Business Expenses

With respect to the remaining unreimbursed employee business expenses at issue, we discuss their deductibility below.

(1) New Uniforms - Taxpayers may deduct expenses for articles of clothing under section 162(a) only if the clothing is required in the taxpayer's employment, is not suitable for

---

[6] Petitioners included Mr. Spivey's cellular phone expenses for all years as "other unreimbursed employee business expenses".

general or personal wear, and is not worn for general or personal purposes. Yeomans v. Commissioner, 30 T.C. 757, 767-768 (1958). On his tax returns, Mr. Spivey claimed deductions of $525, $527, and $530 for new uniforms that he purchased in 2002, 2003, and 2004, respectively. However, Mr. Spivey did not provide support for those amounts, and at trial he testified that he actually spent $93, $139, and $369.99 on purchasing new uniforms in 2002, 2003, and 2004, respectively. We find that the uniforms (Amtrak shirts, jackets, and pants) were not suitable for general wear, and were "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. Accordingly, we hold that petitioners are entitled to business expense deductions for Mr. Spivey's new uniforms of $93, $139, and $369.99 for 2002, 2003, and 2004, respectively.

(2) Uniform Maintenance - Petitioners multiplied $24 per week times 38 weeks to arrive at a deduction of $912 for uniform maintenance for each year at issue. However, petitioners did not testify or provide receipts to substantiate the cost or frequency of professional cleaning. We find that Amtrak required such maintenance, but the unsubstantiated amounts that petitioners claimed seem overstated. Since the record is silent regarding the amounts of these expenses, we allow petitioners, under Cohan v. Commissioner, 39 F.2d at 543-544, a deduction of $10 per week multiplied by 38 weeks per year to arrive at a

deduction for uniform maintenance of $380 for each year, 2002, 2003, and 2004.

(3) Safety Shoes -  The record is devoid of evidence that Mr. Spivey's employment required safety shoes, that the shoes were not suitable for general or personal wear, and that he did not wear the shoes for general or personal purposes. Although Mr. Spivey testified that his shoes permitted him to "feel the ballast [the stones on train tracks between the ties]" during a stop, Mr. Spivey provided no evidence that he was, in fact, required to wear a specific type of shoe in his work. Under cross-examination, Mr. Spivey stated that the shoes were not steel toe and were not resistant to chemicals.  We conclude that petitioners are not entitled to a deduction for Mr. Spivey's safety shoes for 2002, 2003, or 2004.

(4) Safety Glasses - On the basis of Mr. Spivey's thorough description of the uniqueness of the glasses and the fact that Amtrak-MARC required him to use them, we conclude that these expenses were necessary, appropriate, and helpful to his business.  Welch v. Helvering, 290 U.S. at 113.  Mr. Spivey's testimony as to the cost and quantity of glasses he purchased was also credible.  Thus, under Cohan, we permit petitioners to deduct the expense of purchasing two pairs per year, for a total annual cost of $325 for years 2002, 2003, and 2004.

(5) Grooming - The Court has long held that grooming expenses are inherently personal and are nondeductible. Drake v. Commissioner, 52 T.C. 842, 844 (1969). We are unconvinced that Mr. Spivey's particular grooming regime was "directly connected with or pertaining to the taxpayer's trade or business". Sec. 1.162-1(a), Income Tax Regs. We acknowledge that his employment required him to maintain a general level of proper grooming; however, we do not find any element of this requirement to be so extraordinary as to permit Mr. Spivey to deduct grooming as an ordinary or necessary trade or business expense. Accordingly, we sustain respondent's disallowance in full regarding Mr. Spivey's claimed grooming expenses.

(6) Supplies - Petitioners claimed a $1,000 deduction for supplies Mr. Spivey purchased in 2002. Petitioners' supporting schedule noted that Mr. Spivey's 2002 supplies purportedly included expenses for a laptop computer, which, during testimony, Mr. Spivey acknowledged was a mistake. Removing the computer, and relying on Cohan, we find $100 is a reasonable estimate of the other supplies Mr. Spivey purchased during 2002.

III. Tax Return Preparation Fees

Section 212(3) permits a deduction for expenses paid "in connection with the determination, collection, or refund of any tax." Thus, payments by taxpayers for preparation of their

returns are deductible. Sec. 1.212-1(l), Income Tax Regs. Petitioners claimed on their returns and testified uncontrovertedly that they paid a preparer $35, $100, and $30 to assist with their returns for 2002, 2003, and 2004. A preparer's name was printed on the returns for those years, and we find it unlikely that a preparer would list a deduction for tax preparation fees that petitioners did not pay. Moreover, respondent allowed the deduction for 2002 and appears to have disallowed it for 2003 and 2004 only by mistake. We therefore hold that petitioners may deduct the disputed tax return preparation fees for 2003 and 2004.

IV. Accuracy-Related Penalty and Addition to Tax for Late Filing

As a final comment we note that respondent determined that for each year at issue, 2002, 2003, and 2004, petitioners are liable for an accuracy-related penalty under section 6662(a) and an addition to tax under section 6651(a)(1) for late filing. Although the Commissioner bears the burden of production with respect to a penalty or an addition to tax, in this case petitioners failed to raise the penalties or the additions as issues in their petition, or at trial. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). These issues are thereby deemed conceded. See Rule 34(b)(4); Swain v. Commissioner, 118 T.C. 358 (2002).

To reflect our disposition of the issues,

<u>Decision will be entered</u>

<u>under Rule 155</u>.