T.C. Memo. 2013-280

UNITED STATES TAX COURT

TIMOTHY DALE THUNSTEDT, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3813-12.                    Filed December 12, 2013.

Timothy Dale Thunstedt, pro se.

<u>Blaine Charles Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, <u>Judge</u>:  Respondent issued a notice of deficiency determining the
following deficiencies, addition to tax, and penalties with respect to Timothy Dale
Thunstedt's Federal income tax for years 2007, 2008, and 2009:

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2007 | $26,571 | -0- | $5,314 |
| 2008 | 11,709 | -0- | 2,342 |
| 2009 | 9,662 | $966 | 1,932 |

The issues remaining for consideration are whether Mr. Thunstedt is entitled to additional deductions, credits, exemptions, and a net operating loss carryover from 2006, none of which he claimed on his original returns. We hold that Mr. Thunstedt did not provide sufficient evidence to substantiate additional deductions, beyond respondent's concessions[1] and the discount fees deduction. Further, he is not entitled to the net operating loss carryover or any additional dependent-related credits or deductions.

## FINDINGS OF FACT

Mr. Thunstedt resided in Minnesota at the time the petition was filed.

Mr. Thunstedt is the proprietor of Cry of the Loon Art Gallery (Cry of the Loon). During the years at issue Mr. Thunstedt traveled to various shows, including sportsman shows, home and garden shows, car shows, art and crafts shows, etc., throughout the Upper Midwest to sell artwork. In addition to

---

[1]At trial, respondent conceded the merchant fees deduction for 2008 and 2009 and the storage facility expense deduction for each year in issue.

**[*3]** traveling to events, Mr. Thunstedt leased kiosks at local malls during certain times of the year, usually during the winter and holiday seasons. Mr. Thunstedt created a portion of the artwork, and he also bought and sold the works of others.

Mr. Thunstedt timely filed his 2007 and 2008 Forms 1040, U.S. Individual Income Tax Return. After being granted an extension, he filed his 2009 Form 1040 on November 17, 2010. He attached to each Form 1040 a Schedule C, Profit or Loss From Business, identifying his principal business as "Art Dealer" for Cry of the Loon.

The Internal Revenue Service examined Mr. Thunstedt's 2007, 2008, and 2009 returns. After reviewing Mr. Thunstedt's records, the revenue agent disallowed deductions for some of Mr. Thunstedt's reported Schedule C expenses because of lack of substantiation. The revenue agent also allowed some deductions that Mr. Thunstedt had not originally claimed.

Respondent issued a notice of deficiency on November 22, 2011, reflecting adjustments to the Schedule C deductions and making other computational adjustments. In addition respondent determined an accuracy-related penalty under section 6662(a)[2] for each year at issue and an addition to tax under section

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the

(continued...)

**[*4]** 6651(a)(1) as a result of the untimely filing of Mr. Thunstedt's Form 1040 for 2009. Mr. Thunstedt timely petitioned the Court.

This case was calendared for trial in St. Paul, Minnesota. At trial Mr. Thunstedt appeared and conceded that most of the IRS' adjustments were correct, but he also argued that he was entitled to additional deductions that were not addressed at the time of the examination.

I. Per Diem Expense Deduction

First, Mr. Thunstedt argued that he should be allowed per diem expense deductions beyond the meals and entertainment expense deductions that had been allowed by the revenue agent because his business was dependent on his traveling to various shows. He also argued that he should be allowed to deduct per diem expenses that he incurred when he traveled to the mall kiosks. In sum Mr. Thunstedt argued that he is entitled to deduct per diem expenses for nearly every day of the year because of his travel to various shows and the mall kiosks.

Mr. Thunstedt first learned about claiming deductions for per diem expenses about a year before trial while talking with another vendor at one of the shows. In an apparent response to that conversation, Mr. Thunstedt prepared calendars

---

[2](...continued)
Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*5] purporting to set out where he had been for each day of the years at issue. Mr. Thunstedt testified that he created the calendars in preparation for trial using calendars that had been maintained contemporaneously but that had become illegible. The calendars listed where Mr. Thunstedt was each day, whether at one of his kiosks or a show, and the per diem rate for that location. Mr. Thunstedt stated that he used the per diem rates from the U.S. General Services Administration for each State that he had visited.

These calendars were proven to be unreliable. At trial respondent provided a receipt Mr. Thunstedt had submitted to substantiate his expenses. This receipt was from a Holiday Inn in La Crosse, Wisconsin, and bore an arrival date of February 7, 2007, and a departure date of February 11, 2007. However, Mr. Thunstedt's calendar showed that he was at a show in Duluth, Minnesota, at that time. The calendar showed an entry for a show in La Crosse the next weekend, but the calendar entry was for only three days whereas the hotel bill spanned five days. Mr. Thunstedt's only explanation for the discrepancy was that he must have switched around the shows when he was transferring the dates from his original calendar.

**[*6]** II. <u>Credit Card Charge Deduction</u>

Second, Mr. Thunstedt argued that he should be allowed to deduct additional business expenses that he paid using his credit cards. In the examination, the IRS allowed Mr. Thunstedt a deduction of 75% of the amount shown on his credit card statements. Mr. Thunstedt claimed he was entitled to deduct more. Mr. Thunstedt used 16 different credit cards with respect to his business. He stated at trial that in addition to making purchases for such items as gas, meals, hotel stays, supplies, and show fees, he also would take cash advances from the credit cards to help "float" his business.

Mr. Thunstedt testified that approximately 95% of his credit card charges represent deductible expenses. He based this number on a breakdown that his certified public accountant had prepared. Mr. Thunstedt's CPA went through all of the credit card records and categorized each expense as business or personal. The CPA made his determinations by asking Mr. Thunstedt about the nature of the expenses. The CPA would label any expense incurred outside of his metropolitan area of Little Falls, a town of less than eight square miles, as business. Mr. Thunstedt argued that any expense incurred outside of Little Falls was business related because, in his words, "everything I do is business".

**[*7]** III.  <u>Home Office Expense Deduction</u>

Third, Mr. Thunstedt argued that because he spends most of his time working from home, he should be allowed a deduction for business use of his home.  Mr. Thunstedt is the only person living in the house, and he testified that 61.19% of his home was used exclusively in relation to his business.  He uses the telephone and Internet for business, does clerical and accounting work, and stores artwork in his home.  Again, Mr. Thunstedt had his CPA compute the deduction amounts.  Mr. Thunstedt provided a Form 8829, Expenses for Business Use of Your Home, combining the expenses for 2006, 2007, 2008, and 2009 and testified that the expenses, including insurance, maintenance, repairs, utilities, and taxes, were fundamentally the same for each year.

During trial Mr. Thunstedt explained the layout of his home, and he provided a square footage breakdown of the home in his reply brief.  He described it as having an office, out of which he does business, plus two extra bedrooms and a garage, all three of which he uses for storage.  Mr. Thunstedt also stated that he accesses the Internet frequently and uses his living room, which is the only room equipped with an Internet connection and a telephone, for business and that most of his Internet and telephone use relates to his business.  Again he emphasized that his life was his business and "everything revolves around artwork".

**[\*8]**  Mr. Thunstedt provided a 2009 Federal Summary Depreciation Schedule to the Court listing his personal residence and a lawn tractor.  He also provided a 2009 Schedule E, Supplemental Income and Loss,[3] listing $24,000 of rents received.  Mr. Thunstedt was unable to clearly explain the $24,000 but stated that he believed the $24,000 was an additional expense that he should have been able to deduct for the rent of his home, even though he did not actually pay the rent to himself.

Mr. Thunstedt reported as the mailing address for Cry of the Loon the address of an abandoned drive-in restaurant that he was renting because he was using that building before he purchased his home.  This was also the address he reported on the Schedules C for the years at issue.  Mr. Thunstedt used the drive-in to store artwork and parked his trailers under the canopy.

IV.  Merchant Credit Card Fees Deduction

Fourth, Mr. Thunstedt argued that he should be allowed a deduction for the remaining amounts of merchant credit card fees for 2008 and 2009 that were not allowed previously.  Mr. Thunstedt testified that when a customer pays for an order with a credit card, the money is transferred to his merchant account and fees

---

[3]There is no indication that the Schedule E was filed with Mr. Thunstedt's 2009 Form 1040.

**[*9]** are charged against his account. There were several kinds of fees that came under this umbrella, some of which were explained at trial. Respondent has conceded the remaining merchant fee amounts for 2008 and 2009.[4]

V. Discount Fees Deduction

Fifth, Mr. Thunstedt argued that he should be allowed a deduction for discount fees assessed during December 2008 and all of 2009. A discount fee is another fee deducted from the merchant account on a per transaction basis. Mr. Thunstedt provided merchant statements describing these fees with his opening brief and testified that while some of the discount fees were allowed by the revenue agent, these were not.

VI. Storage Facility Expense Deduction

Sixth, Mr. Thunstedt stated that he wanted to deduct the fees associated with the storage facility that he uses to store artwork, materials, and his trailers.

---

[4]At trial respondent conceded that Mr. Thunstedt is entitled to the total amount of merchant fees for 2008 and 2009, which equals $4,584. This was the total reported on a spreadsheet included as part of Mr. Thunstedt's opening brief and includes fees of $433 for 2008 and $4,151 for 2009. The fees for 2009 may have been computed erroneously because of a duplicate entry for June 2009. The parties should recompute this number and verify the remaining numbers as part of the Rule 155 computation. The parties should also take into account the amount of merchant fees already allowed by respondent.

**[\*10]** He testified that he paid $400 each month during the years at issue to use the facility. Respondent conceded $4,800 of storage fees for each year.

## VII. Dependent-Related Credits and Deductions

Seventh, Mr. Thunstedt argued that he should be allowed any credits or deductions that relate to his two children, including the dependency exemption deduction, the earned income tax credit, and the child tax credit. Mr. Thunstedt's sons were 15 and 13 in 2006, and he had been divorced in 1995. Mr. Thunstedt and his ex-wife share legal custody, and although his ex-wife was awarded sole physical custody of the children, Mr. Thunstedt's children were with him much of the time. The marital termination agreement does not state who would claim any deductions or credits related to the children, and Mr. Thunstedt's ex-wife did not provide him with a Form 8332, Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent.

## VIII. Net Operating Loss Carryover

Finally, Mr. Thunstedt would like us to allow many of the deductions he is now claiming for 2006, a year not at issue, because they were not taken into account when he filed that return. Mr. Thunstedt's 2006 return was audited and the IRS assessed a deficiency of approximately $1,000. Although Mr. Thunstedt did not agree with the deficiency, he stated that the amount was paid "somehow".

[*11] Now he would like to claim additional deductions that would result in a loss for 2006.  These deductions include per diem expenses, home office expenses, merchant credit card fees, discount fees, storage fees, dependent-related credits and deductions, car and truck expenses, insurance expenses, and home mortgage interest expenses.  Mr. Thunstedt admits to having no records for the merchant and discount fees and using averages for all the other deductions except mortgage interest expenses, storage fees, and the dependent-related credits and deductions.

OPINION

I.  Burden of Proof

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[5]  The burden may shift to the Commissioner under section 7491(a) if the taxpayer has complied with the necessary substantiation requirements and has maintained all records and cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews.  Although Mr. Thunstedt argues that respondent bears the burden, he has not met these requirements.  As a result, the burden remains on Mr. Thunstedt.

---

[5]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

**[*12]**  Income tax deductions are a "matter of legislative grace", and the burden of proving entitlement to any claimed deduction rests on the taxpayer.[6]  Further, the taxpayer is required to maintain sufficient records to "show whether or not such person is liable for tax".[7]

At trial Mr. Thunstedt presented documents relating to his claimed deductions.  Among those documents were spreadsheets his CPA prepared, Internet printouts, calendars created for trial, and summaries of his arguments.  Those documents were deemed inadmissible at trial because they were not contemporaneously maintained, appeared to have been prepared in anticipation of trial, and lacked reliability.  They also were not admissible as summary exhibits because no original or supporting documents were made available to respondent.[8]

## II.  Deductions

The Code allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[9]  Taxpayers are not allowed a deduction for personal, living, or family expenses except where

---

[6]Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

[7]<u>See</u> sec. 6001.

[8]<u>See</u> Fed. R. Evid. 1006.

[9]Sec. 162(a).

[*13] specifically allowed in the Code.[10]  Again, deductions are a "matter of legislative grace",[11] and taxpayers must maintain sufficient records to establish their claimed deductions.[12]  These records must be retained for as long as the contents may become material and must be kept available for inspection.[13]

Certain expenses are subject to strict substantiation rules under section 274(d).  Such expenses include those relating to travel, meals and entertainment, gifts, and listed property under section 280F(d)(4).  For the years at issue, listed property included passenger automobiles, any other property used as a means of transportation, any property of a type generally used for purposes of entertainment, recreation, or amusement, computers, and cellular telephones.[14]  To comply with the strict substantiation rules, the taxpayer must have adequate records or sufficient evidence corroborating the amount of the expense, the time and the place the expense was incurred, the business purpose of the expense, and the

---

[10]Sec. 262(a).

[11]INDOPCO, Inc. v. Commissioner, 503 U.S. at 84.

[12]Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

[13]Sec. 1.6001-1(e), Income Tax Regs.

[14]Sec. 280F(d)(4).

**[\*14]** business relationship of the taxpayer to any others benefited by the expense.[15]  To substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure.[16]

In some instances the Court may approximate the amount if the taxpayer can establish a deductible expense but cannot substantiate the precise amount.[17]  However, the taxpayer must provide some basis for that estimate.[18]  In addition the Court is precluded from making estimates with regard to expenses that are subject to the strict substantiation requirements under section 274(d).[19]

III.  Per Diem Expense Deduction

As discussed above, section 162(a) allows a deduction for "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Taxpayers are also allowed to deduct traveling expenses

---

[15]Sec. 274(d).

[16]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[17]Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).

[18]Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

[19]Deely v. Commissioner, 73 T.C. 1081, 1101 (1980); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[*15] "while away from home in the pursuit of a trade or business".[20]  The term "away from home" is not defined in the Code.  Accordingly, the IRS adopted the "sleep or rest rule", which was first articulated by the Court of Appeals for the Fifth Circuit in Williams v. Patterson, 286 F.2d 333, 340 (5th Cir. 1961):[21]

> If the nature of the taxpayer's employment is such that when away from home, during released time, it is reasonable for him to need and to obtain sleep or rest in order to meet the exigencies of his employment or the business demands of his employment, his expenditures (including incidental expenses, such as tips) for the purpose of obtaining sleep or rest are deductible traveling expenses under Section 162(a)(2).

The Supreme Court has acknowledged this rule as achieving "not only ease and certainty of application but also substantial fairness".[22]

Although traveling expenses may be deducted under section 162, they are subject to the strict substantiation requirements of section 274(d)(1).  Pursuant to section 1.274-5(g), Income Tax Regs., the Commissioner may prescribe alternative methods of substantiating certain expenses, including per diem allowances.  Accordingly, the IRS provides an optional method by which, in certain circumstances, employees and self-employed individuals who pay or incur

---

[20]Sec. 162(a)(2).

[21]See Rev. Rul. 61-221, 1961-2 C.B. 34 (adopting the "sleep or rest rule").

[22]United States v. Correll, 389 U.S. 299, 303 (1967).

[*16] business-related meal and incidental expenses may use an amount computed at the Federal meals and incidental expenses rate for the locality of travel for each calendar day that the individual is away from home.[23] These expenses are deemed substantiated for purposes of section 274(d) if the individual can substantiate the time, place, and business purpose of the travel in accordance with the regulations.[24] Again, substantiation must occur through the use of sufficient evidence to corroborate the taxpayer's statements or adequate records[25] and to substantiate by adequate records, the taxpayer must maintain an account book, a log, a diary, or a similar record and documentary evidence to establish each element of an expenditure.[26]

As an initial matter we find that Mr. Thunstedt is not entitled to deduct per diem expenses for any of the days where he was not "away from home". This includes the days where he went to various malls to check on his kiosks. While he

---

[23]Rev. Proc. 2009-47, 2009-2 C.B. 524; Rev. Proc. 2008-59, 2008-2 C.B. 857; Rev. Proc. 2007-63, 2007-2 C.B. 809; Rev. Proc. 2006-41, 2006-2 C.B. 777.

[24]Rev. Proc. 2009-47, sec. 4.03, 2009-2 C.B. at 526; Rev. Proc. 2008-59, sec 4.03, 2008-2 C.B. at 860; Rev. Proc. 2007-63, sec. 4.03, 2007-2 C.B. at 811-812; Rev. Proc. 2006-41, sec. 4.03, 2006-2 C.B. at 780.

[25]Sec. 274(d).

[26]Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., supra.

[*17] may have been too far from home to return for meals, this is not the test. Individuals often commute to work and are unable to return to their homes during the day. It is only when their employment-related travel requires the individual to "sleep or rest" that he will be entitled to a deduction for those expenses. This is not the case when Mr. Thunstedt makes day trips to area malls.

Mr. Thunstedt might be eligible for per diem expense deductions under the optional method for his travel to shows; however, for the travels before the Court Mr. Thunstedt may not use this method because he has failed to substantiate the time, place, and business purpose of the travel. Mr. Thunstedt provided the Court with calendars that he had created in preparation for trial. Although Mr. Thunstedt stated that these calendars were based on calendars that he kept contemporaneously, he did not offer any contemporaneously created calendar into evidence, and the newly created calendars that he provided were shown to be unreliable. For the reasons previously stated, the calendars he created for trial were not admissible.

Accordingly, Mr. Thunstedt is not entitled to a per diem expense deduction for any of the years at issue.

**[*18]** IV. <u>Credit Card Charge Deduction</u>

Generally, whether an expenditure is ordinary and necessary is a question of fact.[27] A taxpayer's vague or general statement that his expenses were incurred in the pursuit of business is not sufficient to establish a relation to any such trade or business.[28]

Mr. Thunstedt believes that he is entitled to deduct additional business expenses that he paid using his credit cards on the basis of a breakdown that his CPA prepared. Mr. Thunstedt's CPA determined which expenses were business and which were personal by asking Mr. Thunstedt, who stated at trial that his position was that any expense incurred outside of Little Falls was a business expense because, in his words, "everything I do is business".

There is no evidence to prove that Mr. Thunstedt should be allowed additional deductions. First, the revenue agent allowed a blanket 75% deduction, meaning that we do not know what specific expenses were accounted for in that 75%. Second, Mr. Thunstedt has not provided any evidence, other than the breakdown that his CPA created which was included in his opening brief, of

---

[27]<u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).

[28]<u>Ferrer v. Commissioner</u>, 50 T.C. 177, 185 (1968), <u>aff'd per curiam</u>, 409 F.2d 1359 (2d Cir. 1969).

[*19] business expenses that should have been allowed as deductions. Mr. Thunstedt vaguely referred to estimates of credit card interest and additional expenses but did not provide any records to support his claims.

Accordingly, Mr. Thunstedt is not entitled to any further expense deductions for any of the years at issue.

## V. Home Office Expense Deduction

As a general rule, a taxpayer may not deduct expenses relating to property used by the taxpayer as a residence.[29] An exception to this general rule, found in section 280A(c)(1)(A), allows a deduction if the expense is allocable to a portion of the taxpayer's residence which is exclusively used on a regular basis as the taxpayer's principal place of business. The Supreme Court laid out a two-part test to determine whether a taxpayer's residence qualifies as a principal place of business: (1) the relative importance of the activities undertaken at each business location; and (2) the time spent at each location.[30]

---

[29]Sec. 280A(a).

[30]Commissioner v. Soliman, 506 U.S. 168, 175-177 (1993).

**[\*20]** However, after the Supreme Court's decision in <u>Soliman</u>, Congress added flush language following section 280A(c)(1)(C).[31]  This language defines "principal place of business" as including "a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."  Congress added this definition to overrule the rigid standard established in <u>Soliman</u>.[32]

Section 280A(c)(2) allows a deduction for space allocated in the residence and used on a regular basis as a storage unit for inventory or product samples, but only if the residence is the "sole fixed location of such trade or business."

At trial Mr. Thunstedt stated that he does business out of his home office and uses his two extra bedrooms and garage to store his artwork.  Further, he uses the living room because that is the only room with Internet and telephone service. His business activities include booking shows, clerical duties, shipping orders, and meeting with local customers on occasion.  Again, Mr. Thunstedt emphasized that

---

[31]The Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 932(a), 111 Stat. at 881.

[32]<u>See</u> H.R. Rept. No. 105-148, at 407 (1997), 1997-4 C.B. (Vol. 1) 319, 729.

**[*21]** he lives alone and because his business is his life, "everything revolves around artwork".

Although we find that Mr. Thunstedt used a portion of his home to conduct substantial administrative or management activities related to his business, we have not been provided with evidence to suggest what portion of his home is used exclusively on a regular basis. Mr. Thunstedt first explained the square footage breakdown of many of the rooms in his reply brief, which is not evidence.[33] Additionally, Mr. Thunstedt stated that his children were with him "a large portion of the time". Implicitly, Mr. Thunstedt would be spending time with his family in the living room and likely would be allowing the children to sleep in at least one of the extra bedrooms. While it appears that Mr. Thunstedt used his home in connection with his art business, he failed to establish that any portion was used "exclusively" for the business.

Again, while we can estimate a home office expense deduction under the Cohan rule,[34] Mr. Thunstedt has not provided the Court with evidence that would allow us to make this estimate. Mr. Thunstedt is also not allowed a deduction for

---

[33]See Rule 143(c).

[34]See Margolis v. Commissioner, T.C. Memo. 1999-24, aff'd per curiam without published opinion, 213 F.3d 632 (4th Cir. 2000); Ende v. Commissioner, T.C. Memo. 1975-256.

[*22] any part of his dwelling unit used for storage under section 280A(c)(2) because he rented a storage facility elsewhere, the address of which was used as the address of his business on the Schedules C filed for the years at issue. Accordingly, his residence, while being the location where a substantial portion of his business activities were conducted, is not the sole fixed location of his trade or business.

On the basis of the foregoing, Mr. Thunstedt is not allowed a home office expense deduction.

## VI. Discount Fees Expense Deduction

Again, taxpayers are allowed a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".[35] Mr. Thunstedt provided copies of his merchant statements from December 2008 through December 2009 with his opening brief to show that he had incurred discount fees expense during the years at issue. The statements are addressed to Cry of the Loon and are the same documents respondent used to determine the amount of the merchant credit card fees deduction concession. These documents, coupled with Mr. Thunstedt's testimony about the fees, satisfy his burden.

_____

[35]Sec. 162(a).

[*23] Alternatively, respondent did not dispute the discount fees expense deduction in his answering brief, and on that ground we may deem the issue conceded.

Accordingly, Mr. Thunstedt is entitled to deductions for discount fees incurred from December 2008 through December 2009.

VII.  Dependent-Related Credits and Deductions

The Code establishes various credits and deductions, including the child tax credit,[36] the earned income tax credit,[37] and the dependency exemption deduction,[38] for taxpayers claiming eligible dependents.  In order to claim these credits and deductions, the individual must meet either the qualifying child or qualifying relative requirements set forth in section 152.  Section 152(e) includes a special rule for divorced parents.  A child of divorced parents will be considered a qualifying child or qualifying relative of the noncustodial parent only if the custodial parent signs a written declaration that he or she will not claim the child as a dependent for any taxable year beginning with the current calendar year and

---

[36]Sec. 24.

[37]Sec. 32.

[38]Sec. 151(c).

[*24] that declaration is attached to the noncustodial parent's return.[39]  A "'custodial parent' means the parent having custody for the greater portion of the calendar year."[40]  This declaration is commonly made on a Form 8332.

Mr. Thunstedt testified that because his ex-wife was the custodial spouse under the marital termination agreement, the children lived with her and visited him.  Further, Mr. Thunstedt has never received a Form 8332 from his ex-wife or received any other communication from her that she was releasing her rights to claim any credits or deductions based on the children.

As a result, Mr. Thunstedt's children do not meet the qualifying child or qualifying relative requirements, and he is not entitled to any dependent-related credit or deduction.

VIII.  Net Operating Loss Carryover

The Tax Court is a court of limited jurisdiction and may exercise that jurisdiction only to the extent expressly authorized by Congress.[41]  The Court's jurisdiction to redetermine a deficiency arises from a timely filed petition and is

---

[39]Sec. 152(e)(1) and (2).  There is also an exemption for certain pre-1985 divorce instruments which is not applicable here.  Sec. 152(e)(3).

[40]Sec. 152(e)(4)(A).

[41]Sec. 7442.

[*25] confined to the year that is the subject of the notice that gave rise to that petition.[42] The Court may consider the tax for other years but only to the extent necessary to redetermine the amount of the deficiency petitioned.[43] Therefore, the Court is vested with the jurisdiction to consider Mr. Thunstedt's claimed 2006 loss only to the extent it would carryforward to the years under consideration.

Mr. Thunstedt is attempting to claim additional deductions for 2006. Many of these deductions are the same as the ones already explained for the years at issue, including per diem expenses, home office expenses, merchant credit card fees, discount fees, storage fees, dependent-related credits and deductions, car and truck expenses, insurance expenses, and home mortgage interest expenses. Mr. Thunstedt did not provide any evidence at trial to prove entitlement to these deductions. Most of the amounts were based on estimates from the years at issue, and no records were entered into evidence to substantiate the remaining deductions. Further, Mr. Thunstedt is not entitled to any dependent-related credits or deductions for the reasons discussed above.

Accordingly, Mr. Thunstedt is not entitled to additional deductions for 2006.

---

[42]Sec. 6213(a).

[43]Sec. 6214(b)

**[\*26]** IX.  Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failing to file a Federal income tax return timely.  Respondent bears the burden of production with respect to any penalty or addition to tax.[44]  Mr. Thunstedt then bears the burden of proving any defenses.[45]

Included with the stipulation of facts is Mr. Thunstedt's 2009 Form 1040. The Form 1040 shows a received date of November 17, 2010.  Mr. Thunstedt's return was due on October 15, 2010, which is the last filing day, including extensions.  Therefore, respondent has met his burden by showing that the return was filed over one month late.  Mr. Thunstedt cited medical problems and duress in his petition as defenses, but he did not provide any evidence that the date on the return was incorrect or that he had reasonable cause for his untimely filing.

Accordingly, Mr. Thunstedt is liable for the section 6651(a)(1) addition to tax for the year 2009.

X.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a 20% accuracy-related penalty on "any portion of an underpayment of tax required to be shown on a return" if the underpayment is

---

[44]Sec. 7491(c).

[45]See Higbee v. Commissioner, 116 T.C. 438, 447 (2001)

[*27] due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax. As with section 6651(a), respondent bears the burden of production as to the penalty.[46] The penalty will not apply to any portion of the underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[47]

As defined in the Code, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term 'disregard' includes any careless, reckless, or intentional disregard."[48] Negligence has been further defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"[49] Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[50]

---

[46]Sec. 7491(c).

[47]Sec. 6664(c)(1).

[48]Sec. 6662(c).

[49]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964)).

[50]See Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6662-3(b)(1), Income Tax Regs.

**[\*28]** An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[51]

In accordance with this opinion, Mr. Thunstedt's exact underpayment for each year depends on the Rule 155 computations. If these computations establish a substantial understatement of income tax for any year, respondent has met his burden.[52] Even if this is not the case, Mr. Thunstedt is still liable for the penalty because he acted with negligence. Respondent has the burden of production for negligence. Mr. Thunstedt did not introduce adequate records at trial to substantiate either the deductions disallowed in the notice of deficiency or the newly claimed deductions. Likewise, Mr. Thunstedt did not provide any evidence or testimony to prove that he acted with reasonable cause and in good faith. Using word of mouth tax advice from a person of unknown qualifications, Mr. Thunstedt determined that he was entitled to per diem expense deductions that were unsupported by evidence. Accordingly, Mr. Thunstedt is liable for the section 6662(a) penalty for all the years at issue.

---

[51]Sec. 6662(d)(1)(A).

[52]See Olagunju v. Commissioner, T.C. Memo. 2012-119; Jarman v. Commissioner, T.C. Memo. 2010-285.

**[*29]** XI.  <u>Conclusion</u>

On the basis of our examination of the record before us and the parties' arguments at trial and except as otherwise noted, we find that Mr. Thunstedt failed to show that respondent's adjustments are incorrect or that he is entitled to additional deductions beyond those discussed above.  Further, respondent met his burden of production with respect to an addition to tax and penalties.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.